## ALGER–SULLIVAN LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6197.

Circuit Court of Appeals, Fifth Circuit. April 1, 1932.

Rehearing Denied May 3, 1932.

W. W. Spalding, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, A. G. Divet, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Pursuant to written agreements, in 1921 petitioner transferred on its books and delivered 150 shares of its capital stock, having a market value of $18,375.00, to four of its employees. Treating these transactions as the payment of bonuses as reasonable and extra compensation for services rendered by the said employees, petitioner deducted the amount as an expense of doing business. The Commissioner ruled against this contention, and held that the transfers of stock were outright sales and not deductible. A deficiency, of $1,766.43 was determined against petitioner. On appeal the Board of Tax Appeals affirmed the Commissioner. 20 B. T. A. 1109.

Except as to the names of the employees and the amount of stock, the contracts were in the same terms and were as follows: "State of Florida, County of Escambia.

"This contract entered into between A. W. Ranney, party of the first part, hereinafter called the employee, and the Alger-Sullivan Lumber Company, party of the second part, hereinafter called the company.

"Witnesseth: 1st. The company has this day agreed to set apart and hold in its Treas-

ury Fifty (50) shares of the capital stock of the Alger-Sullivan Lumber Company and sell the same to the employee at and for the sum of One Hundred & 00/100 ($100.00) Dollars per share, subject to the following conditions.

"2nd. So long as the employee remains in the employ of the company he shall be entitled to a credit on the purchase price of said stock a sum equal to whatever cash dividend said shares would be entitled if outstanding less five (5%) per annum on the principal sum, and whenever the dividends on said shares shall have fully paid the full purchase price thereof, with interest, then the said shares shall be issued to the employee as fully paid stock of the company. Provided, however, that if the company should fail to pay dividends during any calendar year of as much as five (5%) per cent, the employee shall not be chargeable with interest on the sum due by him during said year in excess of the dividends paid by the company.

"3rd. If during the period of this contract, the employee should die, while in the employ of the party of the second part, his direct heirs, meaning those who are dependent upon him for support, shall have the privilege within three months after his death, of paying up the amount still due under this contract and receive the shares which it covers, provided the employee shall not have sold his interest in said shares or allowed the same by operation of law or otherwise, to get beyond his control.

"4th. If during the period of this contract, the employee should resign, be discharged or otherwise cease to be an employee of the company or should sell his interest in said shares or allow the same by operation of law or otherwise to get beyond his control, then the company shall have the right and option to cancel this contract, and in lieu of continuing same, pay the employee or his assigns the aggregate amount of the dividends which have been placed to the credit of the purchase price of said stock with interest at the rate of 5% per annum for the time.

"5th. If at the end of five years from this date the employee is still an employee of the company, he shall have the privilege of paying up the amount still due in cash, and receive his shares.

"6th. So long as this contract remains in full force and effect, the employee shall have the right to vote said shares at all stockholders' meetings as fully as if said shares had been issued to him.

"In witness whereof, the party of the first part has hereunto set his hand and seal, and the party of the second part has caused this instrument to be executed in its name by its President and attested by its Secretary under its corporate seal on this first day of February, 1918. The same being executed in duplicate each party receiving a copy."

Substantial dividends were declared annually and credited against the contracts, with the result that all were fully paid up in approximately four years. The stock when transferred had a market value of $18,375.

Under the provisions of section 234 (a) (1) of the Revenue Act of 1921 (42 Stat. 254), which governs, all ordinary and necessary expenses paid or incurred during the taxable year, in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, are deductible. There is no specific statutory provision covering the giving, or deduction, of bonuses, but Regulations 62, adopted under the act of 1921, provide as follows:

"Art. 107. *Bonuses to Employees.*—Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. It is immaterial whether such bonuses are paid in cash or in kind or partly in cash and partly in kind. * * *"

"Art. 33. * * * Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash. * * *"

Transactions similar to those here under consideration have been held to be the payment of bonuses by the Commissioner and deductions of the market value of the stock allowed in the year in which it was delivered. Klein Fed. Income Taxation, § 15:25 (f) and authorities cited.

The Board held that the provision of article 33, quoted above, was not applicable to the case. Perhaps it was intended, as found by the Board, to apply only to returns made by the employee, but it is indicative of the policy of the Treasury Department, and it would be illogical not to give it effect by analogy as applied to returns made by the employer.

The use of the word "sale" in a contract does not necessarily conclusively determine its character. Its meaning may be qualified and

the word deprived of its ordinary force by other provisions of the agreement. Nor is it conclusive that the contract was a sale, because the employee was given the right to vote the stock before its delivery to him. Stock is frequently voted by persons having no real ownership of it, such as trustees or others acting in a fiduciary capacity.

It is clear that the contracts in question lacked essential elements of a sale. There was no agreement to buy. There was no price in money to be paid by the employee, and he gave nothing for the stock except his honest and faithful services, which he was obliged to continue until the dividends credited equalled the par value of the stock. If there had been no dividends, he might never have become the owner of the stock set aside to him. The other provisions of the contract are immaterial, as conditions did not arise to bring them into operation. It is evident that petitioner intended in good faith to give bonuses in stock to valued employees as additional compensation, and there was no intention to make an outright sale of stock to them. The Board was wrong in holding the transactions to be sales.

Respondent raises the point on appeal that the burden was on petitioner to overcome the presumption of verity attending the assessment and to show that the compensation paid, including the stock, was reasonable and an expense necessarily incurred in carrying on the business. There is no evidence in the record on this point, and the Board made no finding as to it. The petition to the Board in section 5 (a) alleges, in substance, that the market value of the stock, when added to the regular compensation, was no more than reasonable, and that the revenue agent, whose report was adopted by respondent, did not question the reasonableness of the compensation paid. The deficiency letter is annexed to the petition as an exhibit, and contains this clause: "Your contention that the capital stock issued during 1921 to employees constituted a bonus and therefore an allowable deduction from gross income has been denied. The information on file in this office discloses that the stock so issued constituted a sale of capital stock; a capital transaction in which no deduction may be allowed."

The answer denied the material allegations of section 5 (a) of the petition "inconsistent with or contrary to the determination of the Commissioner as set forth in the deficiency letter." If the allegation of the petition referred to was admitted, there was no need of evidence to support it.

The pleadings are susceptible of the interpretation that the allegation was admitted, but that is not entirely free from doubt. However, it is apparent that the point was not deemed to be material by either petitioner or respondent in the proceedings before the Board, and the Board did not consider it. In this situation it would be just and fair to both sides that evidence be admitted on this point and a decision be had upon the question by the Board.

The petition is granted. The judgment of the Board is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.