## HUDSON MOTOR CAR CO. v. UNITED STATES.
### No. L—94.

Court of Claims.
June 5, 1933.

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen (Joseph H. Sheppard, of Washington, D. C., on the brief), for the United States.

Before WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

WHALEY, Judge.

The question presented in this case is whether plaintiff is entitled to deductions from gross income in the fiscal year ended November 30, 1919, on account of certain treasury stock which was delivered to three of its employees under contracts relating to their employment by plaintiff. The primary question is whether the stock was delivered to the employees in 1919 as compensation for services rendered in that year and therefore would constitute an allowable deduction in that year or whether the stock was being purchased by the employees through the application of dividends to the purchase price and therefore no basis for a deduction would arise.

Three contracts are involved, but for the purpose of the first part of this discussion we shall deal only with the contract of plaintiff with Clarence A. Hills and leave the other contracts for later disposition. Briefly stated, the facts are as follows:

March 2, 1914, plaintiff entered into a contract with Hills whereby it was agreed that plaintiff would pay Hills $416.66 per month as salary for services and that the plaintiff would set aside its stock of a par value of $10,000 which would become the property of Hills if certain conditions were fulfilled. In the first place it was provided that cash dividends on the stock should belong to and be retained by plaintiff until such dividends should equal the par value of the stock, and if such dividends should become equal to the par value of the stock prior to the expiration of three years cash dividends thereafter declared should belong to Hills, but title to the stock would remain in plaintiff. If, at the expiration of three years the cash dividends should equal the par value of the stock and if Hills should then be in the employ of plaintiff and had been so continuously employed since the execution of the agreement the stock should be transferred to him, subject only to the condition that in case Hills should desire at any time to dispose of the stock, it should first be offered to plaintiff who would have an option for sixty days to acquire the stock at its book value, such book value to be determined as provided under the agreement.

If, however, at the expiration of three years the cash dividends should not equal the par value of the stock, and if Hills should continue in the employ of plaintiff, the cash dividends should belong to and continue to be held by plaintiff until such cash dividends should equal the par value of the stock at which time it would be transferred to Hills, or in the event he so desired, Hills could at any time after the expiration of three years pay the difference between the cash dividends accumulated and the par value of the stock and have the stock transferred to him, subject to the option of plaintiff heretofore referred to for the acquisition of the stock. It was further provided that in the event Hills should cease to be employed by plaintiff prior to the time when the cash dividends should equal the par value of the stock, the accumulated cash dividends should be paid to Hills. In the event of death prior to an accumulation of dividends equal to the par value, the accumulated dividends should be paid to the estate of Hills.

The accumulation of cash dividends did not equal the par value of stock reserved for Hills until April, 1919, at which time the stock was delivered to Hills in accordance with the agreement. The position of plaintiff is that the stock was issued to Hills as compensation for services rendered from the date of the execution of the contract until the stock was delivered to him in April, 1919, and that it is accordingly entitled to a deduction from gross income in 1919 to the extent of the fair market value of the stock delivered. However, the defendant contends that the stock was not to any extent issued to Hills as compensation for services rendered but was sold to him, and accordingly it could not be considered as a deduction from gross income. In other words, the contract was dual in character in which Hills was paid for his services at a stated salary and also in which Hills was sold stock which paid for itself through the application of dividends on such stock to the purchase price,

and that accordingly only the stated salary constitutes an allowable deduction. Much that is said by the defendant is based on various references throughout the contract to "purchase" and "sale," but we think it requires no citation of authority to support the proposition that the entire contract must be viewed as a whole.

When we come to consider the entire contract and what transpired with respect thereto, the conclusion seems inescapable that whatever Hills received in the form of the stock was compensation for services rendered. Any other conclusion would be tantamount to saying that plaintiff gave the stock to him, since it is clear that no payments were made for the stock other than the rendering of service. It is, of course, true that dividends were allowed to accumulate on the stock until such accumulation equaled what, in one sense, might be termed the purchase price, and from this defendant seems to contend in effect that Hills was constructively receiving dividends, which were being applied in satisfaction of the purchase price, but how did Hills acquire the right to receive the dividends which might be so applied? It would seem a most unusual situation for an individual to be able to acquire stock under a contract by which the stock would be paid for from the dividends without any other obligation resting on the individual to make payment. Any one would be willing to make acquisitions under such circumstances, since there would be everything to gain and nothing to lose. On the other hand, it is difficult to suppose a case where the owner of valuable dividend-paying stock would be willing to "sell" it under such term with no other consideration.

That there was no sale under the contract, but rather an arrangement under which additional compensation would be paid is further shown by the character and ownership of the stock on which the dividends are referred to in the contract as being paid. At no time prior to the delivery of the stock in April, 1919, was such stock outstanding, but it was treasury stock, which belonged to and was retained by plaintiff. Certainly it could not be said that plaintiff was paying itself dividends on its own stock, nor was it paying dividends on the stock to Hills. In our opinion, the so-called "dividends" which were referred to as accumulating were only a means of determining when and, to a certain extent, the amount of additional compensation which would be paid to Hills.

We do not think plaintiff gave the stock to Hills or that there was anything partaking of a gratuity in the transaction. Plainly the contract was one of employment, in which Hills was to be compensated for his services through the stated salary allowance and through an arrangement by which he could acquire stock, and that the intention was that if Hills remained with plaintiff for a given length of time, and his services, together with those of others, resulted in certain profits to plaintiff, Hills would be compensated for his services through the delivery of the stock to him. There was thus held out an inducement to Hills to render his best services to plaintiff, and plaintiff was obligated to compensate Hills for work well done. So long as such compensation may be considered reasonable within the meaning of the applicable statute (section 234 (a) (1) of the Revenue Act of 1918, 40 Stat. 1077), we cannot see the basis for denying the deduction. The fact that it was paid in the manner provided by the agreement should not preclude its allowance; certainly, if the additional compensation had been paid in cash and the cash had been used to acquire the stock, no question (except as to reasonableness) could have been raised as to its deductibility. The important features are that services were admittedly rendered and that such services were compensated for by plaintiff in part through the stock-acquisition arrangement set out in the agreement under consideration. We are of the opinion that compensation so paid constituted an allowable deduction to plaintiff within the limits of reasonableness provided by the applicable statute. Cf. Alger-Sullivan Lumber Company v. Commissioner (C. C. A.) 57 F.(2d) 3, and Albert Russel Erskine, 26 B. T. A. 147.

The same conclusion is applicable in the cases of the Staub and McCornack contracts as in that heretofore referred to with respect to Hills. Most of the basic provisions were of a similar nature, except that in the original Staub and McCornack contracts no provision was made for the issuance of the stock to these employees after the accumulated cash dividends should equal the par value of the stock reserved, but provided instead that after the accumulated cash dividends should equal the par value of the stock reserved all future cash dividends should be paid to these employees; however, they would thereby acquire no title to the stock. After the contracts had been in operation more than three years, namely, from December 24, 1915, in the case of

Staub, and from May 15, 1916, in the case of McCornack, they were modified June 20, 1919, to permit a similar arrangement with respect to the issuance of stock to them, as in the case of Hills. After the execution of the supplemental agreements, Staub, and McCornack were entitled to have the stock issued to them when the accumulated cash dividends should equal the par value ·of the stock reserved, and in the. event they so desired they could accelerate the date of issuance by paying the difference between the accumulated dividends and the par value of the stock. The supplemental agreements also provided for the acquisition by these employees of a larger block of stock than was contemplated by the original agreements. When interpreted as employment contracts, as we think is proper, and having in mind that the original contracts had been in effect more than the three years provided in the Hills contract when the supplemental agreements were executed, we are of the opinion that the same rule should be applied with respect to the stock issued to Staub and McCornack and as with respect to that issued to Hills.

On the basis of the aforementioned contracts, 5,000 shares of the par value of $50,000 were issued to the three employees in question. As heretofore shown, 1,000 shares of a par value of $10,000 were issued to Hills in April, 1919, and at that time the accumulated cash dividends were equal to that amount. In July, 1919, 1,000 shares· of a par value of $10,000 were issued to Staub. At that time the accumulated cash dividends were $3,500 and Staub paid· $6,500 in cash to make up the difference. In August, 1919, 3,000 shares of a par value of $30,000 were issued to McCornack. At that time the accumulated cash dividends were $7,400 and McCornack paid $22,600 in cash to make up the difference. For the issuance of stock of a par value of $50,000, plaintiff received cash in the amount of $29,100 and the balance $20,900 was taken care of through the application of the accumulation of cash dividends as provided in the agreements. The stipulation of facts as·entered into between the parties provides that plaintiff abandons any claim with respect to a deduction on account 2,910 shares since a closing agreement had been entered into with the Commissioner of Internal Revenue under section 606 of the Revenue Act of 1928 (26 USCA § 2606) which precluded a claim to that extent, and that the 2,090 shares for which a deduction is sought "represent that portion of the 5,000 shares of stock issued by the plaintiff

to its employees which was paid for by dividends thereon." In view of the foregoing agreement and since both the book and market value of the stock in 1919 would appear to be in excess of its par value, we think the remaining question may fairly be said to be limited to a determination of the deduction to which plaintiff is entitled in 1919 on account of the issuance of 2,090 shares to the three employees without the payment of. any cash therefor other than the application of accumulated cash dividends which equal their par value.

■■■ As heretofore stated, we are of the opinion that the contracts were entered into and carried out for the purpose of paying to the three employees additional compensation for services rendered from the dates of· execution of the several agreements until the stock was issued. The fact that some of the services were rendered prior to 1919 does not prevent its deductibility in 1919 when payment was made therefor. Plaintiff was on the accrual basis and an item accrues when all events occur which fix the amount to be paid and determine the liability of the taxpayer to pay it. United States v. Yale & Towne Mfg. Co., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. Since no part of the deduction claimed was allowable prior to 1919, but did become fixed as a liability in 1919 when it was satisfied through the delivery of the stock, we are of the opinion that the additional compensation so paid in 1919 is an allowable deduction in that year, subject to the test of reasonableness as provided in section 234 (a) (1) of the Revenue Act of 1918. The fact that such compensation represented in part compensation for prior years is not material. Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733.

■■■ The next question is to determine the amount of additional compensation which was paid in 1919. This amount is definitely fixed by the terms of the employment contracts. ·Under the circumstances prevailing in the year with which we are concerned, namely, the fiscal year ended November 30, 1919 (when the stock in question was delivered to the employees), the allowable deduction is determinative from the contract under which the stock was delivered to the employees and is not based upon the fair market value of stock which was issued without the restrictive provisions common to stock here.involved. Plaintiff urges that the restrictive provisions should be disregarded and the deduction determined on the basis of

the fair market value of the unrestricted stock on the ground that such provisions affect the value of the stock of the employees but not the value of the stock in so far as the plaintiff is concerned. We can see no merit in this contention. When the employees received the stock, it was coupled with the restriction that, in the event they desired to sell such stock, it must first be offered to plaintiff who would have the option to purchase it at its book value (as defined in the contract) at the end of the preceding fiscal year. At the time of delivery to the employees such book value was $50.18 per share whereas the market value for the unrestricted stock was substantially in excess of that amount—contended by plaintiff to be at least $140. Assuming for the purpose of discussion that the latter amount represented the market value of the unrestricted stock, it would seem most unreasonable to consider that plaintiff would not exercise its option to purchase such stock when it could be acquired for little more than one third of that amount. The officers and directors of a corporation are charged with the exercise of due prudence and business judgment in managing its affairs and we think that such prudence and judgment would require the exercise of the option and consequently the acquisition of the stock at its book value. And as far as the employees were concerned, their market for the stock was restricted by the fact that they must first offer the stock to plaintiff who, as we have just stated, would reasonably be considered a purchaser at that price. What plaintiff could buy the stock for and what the employees could receive for the same would be one and the same thing, and, in our opinion, represents the value of the stock which must be used in determining the deduction to which plaintiff is entitled on account of the stock delivered to the employees in 1919. What would have been the deduction allowable, had the fair market value of the unrestricted stock been less than the book value of the restricted stock, is not here involved and accordingly we are not here passing on that question.

Under the terms of the contract the book value of the stock was to be determined by deducting all liabilities from the actual value of the tangible assets as of the close of the preceding fiscal year November 30, 1918, and the parties have stipulated that the balance sheets which were submitted represented plaintiff's "true financial condition" on the dates shown, except as to intangibles which are specifically excluded from such a book value determination. From the balance sheet at December 31, 1918, we have found a book value for the stock on that date of $50.18. It accordingly follows that the compensation which plaintiff paid in the fiscal year ended November 30, 1919, through the medium of the contracts in question is to be computed on the basis of the stock delivered to the employees having a value of $50.18 per share.

The further suggestion is made by defendant that, even if the stock is considered as compensation for services rendered and even if its market value can be determined from the record, the deduction nevertheless cannot be allowed for the reason it has not been shown that such compensation, plus that otherwise allowed, represents reasonable compensation for services rendered as provided by section 234 (a) (1) of the Revenue Act of 1918. However, we are satisfied from the record that such total compensation is not unreasonable in amount for that year and that accordingly a deduction is allowable on account of the stock delivered to the employees. Judgment in favor of plaintiff will be withheld pending the submission of computations by the parties consistent with this opinion. It is so ordered.

BOOTH, C. J., took no part in the decision of this case on account of illness.

GREEN, Judge.

I concur with the foregoing opinion that the stock delivered to the employees had no fair market value or in fact any market value at all, because it could not be sold on the market without first giving the company an opportunity to purchase it at much less than the regular market price. When we speak of the market value of stock, we mean the selling price of stock upon which there are no restrictions as to the sale. Nor do I think that the plaintiff is entitled to a deduction in the amount of the book value of the stock, for the book value is not a measure of actual value. In determining the amount which the plaintiff lost by transferring the stock in question to certain employees, it seems to me that all we can gather from the evidence is that the plaintiff would lose at least the amount it was required to pay if it bought the stock back.