### NATIONAL CASH REGISTER CO. v. UNITED STATES.

No. 41820.

Court of Claims.

May 6, 1935.

694

Bernhard Knollenberg, of New York City (Lord, Day & Lord, of New York City), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and WHALEY, Judges.

WHALEY, Judge.

This is an action brought to recover income taxes paid by the plaintiff for the year

1926 in which plaintiff is claiming a deduction on account of certain stock and cash distributed to its employees.

Although the findings of fact are voluminous, when analyzed there is only one question for decision in this case.

■ Did the plaintiff supply the B stock and the sum of money placed with the trustee and, as a result of the distribution of this stock and money to its employees, were the capital assets proportionately diminished? If the plaintiff has issued treasury stock or money from its assets to its employees as compensation for services rendered and this compensation is reasonable, its assets have been reduced pro tanto, and it is entitled to recover. Hudson Motor Company v. United States, 3 F. Supp. 834, 78 Ct. Cl. 117.

■ However, the facts of this case show that not one share of stock was issued by the plaintiff in additional payment for services of an employee and not $1 was withdrawn from its treasury to increase the wages of an employee for services rendered during the year in question. The plaintiff received full value for every share issued and no money was ever taken from its treasury to pay additional compensation to an employee. The entire number of shares authorized under the charter was issued and fully paid for. There was no treasury stock. The sum of money distributed was derived from a dividend on the stock held in trust and was not contributed by the plaintiff. The capital and surplus of the plaintiff were not reduced by the creation and application of the trust agreement in the smallest degree. As a matter of fact, the plaintiff received material benefits and its holdings were greatly enhanced by reason of the trust. The very object of the trust was to relieve plaintiff of a possible obligation and to maintain harmony and contentment among its employees.

A brief summary of the facts is only necessary to clarify the situation. The president (Patterson) and his three associates collected into their control and ownership the entire stock of the National Cash Register Company of Ohio. These four men, after acquiring control of the stock, entered into a contract with Dillon, Read & Co., bankers and security promoters, whereby a new company would be organized under the laws of Maryland with 1,100,000 shares of A no voting and no par value stock and 400,000 shares of B voting and no par value stock. All the A and

B stock was issued to Patterson and his associates, and Dillon, Read & Co. purchased from them the entire holdings of class A stock and 17,562 shares of B stock. The remaining shares of class B stock were held by Patterson and his associates in proportion to their interests as shown in the findings. During the negotiations, Dillon, Read & Co. discovered the old company had a profit-sharing plan with its employees whereby a certain proportion of the profits was divided among the employees as additional compensation for services rendered during the year. This profit-sharing with its employees had been in existence for many years and had interwoven itself into a part of the terms of employment. Fearing a possible obligation which perhaps had ripened into a vested right and the discontinuance of which would entail liability, or create general discontent and dissatisfaction in the labor conditions at the plant, Dillon, Read & Co. were desirous of clearing the stock of this possible impairment of value so they required and demanded of Patterson and his associates that the profit-sharing system be abolished and the stock thereby freed of this contingent liability or potential friction with its labor condition.

It was agreed that Patterson and his associates should set aside, by way of a trust deed, a certain number of shares of B stock owned by them, which, with dividends paid thereon, would be used for the purpose of paying to the employees stock or cash in proportion to their earning capacity with the company, and these employees were graded according to the wages and length of service into five classes and, in this manner, free the company of any claim under the profit-sharing plan. Some employees received stock, others received stock and cash, but the stock and cash were drawn from the trust created by Patterson and his associates in each and every instance. There was no uniformity in payment in certain of the classes. The board of directors of the plaintiff under the terms of the trust had the right to direct the trustee to relinquish the stock and the cash but solely for the benefit of the employees. There could be no direction to the trustee for stock or cash for any other purpose. The plaintiff contributed no stock, no cash, and was without any expenses whatsoever in the abolition of the profit-sharing plan as originally used by the old company.

In the Hudson Motor Company Case, supra, the stock given to the employees was

taken out of the treasury of the company. In the Appeal of Hub Dress Manufacturing Company, 1 B. T. A. 197, the company purchased the stock from the principal stockholder and gave it to two employees as additional compensation for services rendered. Neither of these cases is in any manner similar to the case at bar. The plaintiff had no interest of the smallest degree in the stock or cash placed in trust for the employees. The only interest it had was that given in the trust deed to see to the application of the trust assets so that no part of the stock or cash would go to any other source than for the benefit of the employees. No diminution of its capital assets was sustained and not a dollar of expense was incurred. Having sustained no diminution of assets and no expense, no deduction is allowable. There can be no recovery on this item.

The further contention is advanced by plaintiff that it is entitled to recover because of the failure of the Commissioner to allow credit on its income tax return for certain income taxes which accrued in 1926 in favor of the German government, but which were not paid by plaintiff until 1931. Plaintiff, however, concedes and we have found as a fact that no claim for refund on account of this item has ever been filed with the Commissioner of Internal Revenue. Failure to comply with the statutory requirement to that effect before bringing suit precludes recovery.

The petition is dismissed. It is so ordered.