Jeff JENNINGS, Plaintiff/Appellee,

v.

W.D. HAYES, John D. Hayes, Wanda
Broadway and Bobby McComic,
Defendants/Appellants.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Sept. 28, 1989.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 2, 1990.

Ricky L. Wood, Parsons, for defen-
dants/appellants.

Edwin Townsend, Jr., Townsend and
Townsend, Parsons, for plaintiff/appellee.

HIGHERS, Judge.

This is a breach of contract action ap-
pealed from Chancery Court at Decatur
County in which plaintiff/appellee, Jeff
Jennings (hereinafter appellee), received a
judgment in the amount of $21,343 against
defendants/appellants, W.D. Hayes, John
D. Hayes, Wanda Broadway and Bobby
McCormic (hereinafter appellants).

On October 28, 1986, the parties entered
a contract in which appellants agreed to
sell and appellee agreed to purchase stock
in Golden Butterfly Home Health Care,
Inc. (GBHHC). The contract stated that
there were outstanding liabilities and pro-
vided that:

Sellers represent that GBHHC, has outstanding liabilities as disclosed in Exhibit A, attached hereto, and there are no other existing liabilities, except possible outstanding liabilities for general office expense for which bills may not have been received yet, none of which are expected to exceed $1,000.

The contract further provided that:

Sellers agree to reimburse GBHHC on a pro rata basis for any liability which is not disclosed on Exhibit A and exists or has accrued prior to the date of execution hereof.

GBHHC provided health care services to patients both before and after the above-mentioned sale of stock. A number of those services were paid by Medicare through its intermediary, Blue Cross–Blue Shield. Those payments were made through a Periodic Interim Payment program (PIP) on a 14–day cycle and the amounts were based upon an estimation calculated from prior performance. Due to the fact that the PIP payments were only estimations of the value of the services rendered for the period in question, such payments were not exact representations of the amount owed to GBHHC. In fact, the PIP payment made by Blue Cross–Blue Shield to GBHHC for the period of July 1, 1986 through October 28, 1986 were $21,-343 greater than the value of services for which the payments were made.

■ The main issue in this appeal is whether the $21,343 overpayment by Blue Cross–Blue Shield was a liability that either existed or accrued prior to the date of the execution of the contract. The trial court found that the overpayment was an accrued liability and because appellants failed to disclose such liability to appellee as required by the parties' contract, they were liable for the overpayment.

The appellants contend that the overpayments in question were not liabilities which had accrued prior to entering the contract. Their contention is based on evidence that the total amount of overpayments due to be repaid by GBHHC could not be determined until the end of the fiscal year. They presented evidence

that this final amount is determined by many factors including the effectiveness of the company's management. The appellants conclude that there was not an accrued liability for overpayments until June 30, 1987, which is the end of the fiscal year for GBHHC and therefore they are not liable to appellee under their agreement. We disagree with appellants' reasoning and conclusion.

■ The law in Tennessee recognizes and enforces contracts. Where the language of a contract is unambiguous and there is no claim of fraud or mistake, the court must give effect to the intention of the parties as expressed by the language used in the contract. *Percy Galbreath & Sons, Inc. v. Dehyco Co.*, 548 S.W.2d 664 (Tenn.App.1976); *E.O. Bailey & Co. v. Union Planters Title Guar. Co.*, 33 Tenn. App. 439, 232 S.W.2d 309 (1949). As stated above, the language in the contract in question expresses the appellants' promise to reimburse appellee for any liability which accrued prior to entering the contract. We must hold appellants to that promise.

There are no Tennessee cases defining the term "accrued liability." Referring to other sources, however, we are assured that the Chancellor was correct in his assertion that the amount of overpayments prior to the execution of the contract was an accrued liability. Both parties cite *Hudson Motor Car Co. v. U.S.*, 78 Ct.Cl. 117, 3 F.Supp. 834 (1933) which is a tax case stating that a liability accrues when all events creating the liability have occurred. Accord, *Archer v. Commissioner*, 312 Ky. 454, 227 S.W.2d 1001 (1950).

As each PIP check was received by GBHHC a liability accrued. Payment was received for a preceding 14–day period during which services had been provided to Medicare patients. The difference between the services provided and the actual amount paid was an overpayment or an accrued liability which, although not due at that time, was owed by GBHHC. The amount of that liability was fixed and could not be changed by any subsequent action. Contrary to appellants' contentions, the effectiveness of appellees' business opera-

tions could not alter that amount. Clearly, by October 28, 1986, all events creating the liability for overpayments made prior to that date had occurred, and therefore the liability had accrued.

A dictionary definition of "accrued liability" is "[a]n obligation or debt which is properly chargeable in a given accounting period but which is not paid or yet payable." Blacks Law Dictionary 20 (5th ed. 1979). *See also, Orlando Orange Groves Co. v. Hale*, 119 Fla. 159, 161 So. 284 (1935); *Archer v. Commissioner*, 312 Ky. 454, 227 S.W.2d 1001 (1950). The periodic overpayments could be calculated, were calculated and must be repaid. The fact that the overpayments did not have to be repaid until a later date is of no consequence. The Chancellor below was correct in finding that the total amount of overpayments made between the beginning of GBHHC's fiscal year and the date the parties entered the stock purchase contract was an accrued liability as contemplated in the contract.

The next issue raised by appellants is whether the potential claim for overpayment by Blue Cross–Blue Shield was disclosed to appellee prior to the purchase. The appellants contend that they informed appellee of such a potential claim. Where the parties have reduced a final and complete statement of their agreement into a written contract, evidence of prior or contemporaneous oral statements are inadmissible to contradict the terms of the contract. *Brunson v. Gladish*, 174 Tenn. 309, 125 S.W.2d 144 (1939); *Petty John v. Brown Boveri Corp.*, 63 Tenn.App. 546, 476 S.W.2d 268 (1971). The contract in question is a final and complete agreement between the parties. Thus, the Chancellor properly disregarded any evidence of prior statements made by the parties concerning potential overpayments.

The final issue on appeal is whether the Chancellor properly awarded damages in the amount of $21,343. The appellants contend that appellee's damages are speculative and therefore may not be recovered. They cite *Maple Manor Hotel, Inc. v. Metropolitan Government of Nash-*

*ville and Davidson County*, 543 S.W.2d 593 (Tenn.App.1975) as authority for this proposition. Speculative damages, however, are only prohibited when the existence of damages is uncertain, not when the amount of damage is uncertain. *Cummins v. Brodie*, 667 S.W.2d 759 (Tenn.App. 1983). The existence of damages in this case is certain. There were overpayments made by Blue Cross–Blue Shield to GBHHC prior to appellee's purchase of stock. Even if the amount of overpayments was difficult to calculate, the fact that there were overpayments is certain. Those overpayments were appellee's damages.

Furthermore, the amount of damages suffered by appellee is not speculative. Appellants presented testimony of Mr. George Parrott, a Certified Public Accountant, who calculated the overpayments as of September 30, 1986, to be $23,305. The appellee introduced the deposition of Mr. Bill Ringold, the Desk Audit Manager in the Provider Reimbursement Department of Blue Cross–Blue Shield of Tennessee. Ringold testified that as of October 28, 1986, there existed a liability in the amount of $21,343. In his amended complaint, appellee sued appellants for $21,343 and the Chancellor's judgment was for that amount. Findings of fact by the trial court are presumed to be correct and will be upheld unless the preponderance of the evidence is to the contrary. T.R.A.P. 13(d). We find the Chancellor properly ruled in this matter.

The judgment of the trial court is affirmed. Costs are adjudged against appellants.

CRAWFORD and FARMER, JJ., concur.