FILED

03/13/2019

Clerk of the
Appellate Courts

## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 16, 2019 Session

## PATRICK DURKIN v. MTOWN CONSTRUCTION LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-004623-16  Rhynette N. Hurd, Judge**

_____

### No. W2018-00953-COA-R3-CV

_____

This is the second appeal from a trial court's award in a case dealing with damage to real property. The plaintiff's home had been damaged by a rainstorm while a construction company was in the middle of repairing the roof. The trial court entered an award in favor of the plaintiff for the reasonable costs of repair and remediation in the amount of $118,926.12 by totaling the damage estimate of the defendant's insurance adjuster with the estimates provided by the plaintiff's experts. While we affirm the trial court's method of awarding damages based on the reasonable costs of repair, finding duplication in its award, we vacate the amount of the trial court's judgment and remand the case for a new calculation of damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Vacated in part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ROBERT E. LEE DAVIES, SR. J., joined.

Christopher M. Myatt, Memphis, Tennessee, for the appellant, MTown Construction, LLC.

Clay Culpepper, Memphis, Tennessee, for the appellee, Patrick Durkin.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

Patrick Durkin's ("Plaintiff") home was damaged by a rainstorm while MTown Construction, LLC ("Defendant") was in the process of removing and replacing the roof. On August 25, 2016, Defendant's workers began removing the existing roof from Plaintiff's home. About an hour after having removed the existing roof, a heavy

downpour occurred. Defendant's workers attempted to cover the exposed roof with tarps,[1] but, despite the placement of the tarps, water began to pour into Plaintiff's home. The water poured in for over an hour and began to seep through the ventilation system and out of the light fixtures. Defendant completed the installation of the new roof on August 27, 2016; however, by this time, the interior ceilings of Plaintiff's home had started to collapse.

On August 28, 2016, Plaintiff contacted Defendant's owner, Michael Ingalsbe, stating that he needed him to contact Defendant's insurance company in order to assess the damage. Mr. Ingalsbe, however, stated that he did not want to file a claim with his insurance company, assuring Plaintiff that he would handle everything on his own and ultimately agreeing to meet at Plaintiff's home to inspect the damage. Eventually, on August 30, 2016, a storage pod was delivered to Plaintiff's home, but on September 2, 2016, Mr. Ingalsbe contacted Plaintiff and explained that his crew was unable to handle the job and that he would, in fact, file a claim with his insurance company. On September 9, 2016, Robert Rutherford, an adjuster with Cook Claims Services, went to Plaintiff's home to assess the damage. Mr. Rutherford inspected every room, ultimately classifying the damage to Plaintiff's home as "water damage" and stating in his report that damage to the plaster ceiling existed in practically every room. Mr. Rutherford, however, stated that the wooden floors were not damaged and would not need to be refinished. Despite such classification, Mr. Rutherford did not take any moisture readings, and his estimate included a cost of only $245.93 for water extraction and remediation. In total, Mr. Rutherford estimated that the repairs to Plaintiff's home would cost $24,678.84.

Believing Mr. Rutherford's estimate to be too low, Plaintiff obtained two additional estimates from licensed contractors and an expert in water/mold remediation.[2] Drew Hargrave of Capital Construction assessed the damage and prepared a supplemental estimate to Mr. Rutherford's, providing for additional repair costs of $33,455.53.[3] At trial, Gage Morefield, also of Capital Construction and Mr. Hargrave's superior, was tendered as a residential construction expert and testified that the supplemental estimate prepared by Mr. Hargrave would make Plaintiff whole. Accordingly, the Capital Construction estimate, together with Mr. Rutherford's initial estimate, provided that it would cost $58,134.37 to perform the necessary repairs and reconstruction on Plaintiff's home.

---

[1] Plaintiff's complaint alleged that the tarps used to cover the exposed roof were threadbare and covered with holes and were the same tarps that had been used to collect debris, old shingles, and roofing materials.

[2] Plaintiff took particular issue with the fact that, despite Mr. Rutherford's classification of the damage as "water damage," his estimate provided only $245.93 for water extraction and remediation.

[3] Unlike Mr. Rutherford's estimate, Mr. Hargrave's estimate did provide a cost for sanding, staining, and refinishing the wooden floors.

Plaintiff also obtained an estimate from Logan Little, the operations manager for ServiceMaster by Cornerstone and a qualified expert in water and microbial remediation. During his inspections, Mr. Little found wet materials on the ceilings, walls, and floors, and water damage and microbial growth throughout the home. Mr. Little's estimate called for, among other things, the removal of the drywall, plaster ceilings, and floors in every room of Plaintiff's home, for a total of $60,791.75. These procedures, according to Mr. Little, were "absolutely" necessary before reconstruction efforts could begin and that, until then, Plaintiff's home would remain unsafe and uninhabitable.

On November 14, 2016, Plaintiff filed suit against Defendant in the Shelby County Circuit Court ("the trial court"), alleging negligence and breach of contract. He sought to recover damages for the construction and remediation costs that would be necessary to address the water damage throughout the home, the repair of the defective roof, the displacement costs due to the home being uninhabitable, and other incidental damages. A bench trial was conducted on May 10 and 11, 2017, during which the trial court heard testimony from Plaintiff and Messrs. Rutherford, Morefield, Hargrave, and Little. The trial court found for Plaintiff and ordered the parties to submit post-trial briefs on the proper measure of damages to Plaintiff's home. Ultimately, on June 8, 2017, the trial court entered a judgment for Plaintiff, awarding the following damages: $9,625.00 for loss of use; $258.93 for storage fees; $7,000.00 for damages relating to repairs necessary to fix the roof; and $118,500.00 for the damages to Plaintiff's home resulting from the extensive water damage. Regarding the water damage, the trial court acknowledged that Plaintiff had presented evidence regarding the cost to repair the damage, but it instead elected to award the damages based on the diminished value of the home.[4] Defendant filed its first notice of appeal in this case on June 21, 2017. On appeal, this Court affirmed in part, reversed in part, and remanded the case to the trial court. *See Durkin v. MTown Constr., LLC*, No. W2017-01269-COA-R3-CV, 2018 WL 1304922 (Tenn. Ct. App. Mar. 13, 2018) (hereinafter *Durkin I*). Specifically, this Court took issue with what the trial court had described as a "'creative' approach to determining the diminution in value in the absence of relevant evidence from trial" as well as the fact that the trial court's order "did not include any finding with a value or total of the 'cost of repair' evidence presented by [Plaintiff]." *Id.* at *4. Noting that the proper measure of damages was the reasonable cost of repair, this Court held that "[i]n the absence of any ruling by the trial court in this case as to the reasonable cost of repair, we remand for the trial court to make the necessary factual findings and an award of damages based on the reasonable cost of repair." *Id.* at *5-6.

---

[4] The trial court awarded this amount after Plaintiff had testified that the fair market value of his home was $144,000 the day before the rain event as well as the day after the rain event. The trial court, however, noted that "the problem with this testimony is that the damages to Plaintiff's home did not significantly occur until seventy-two (72) hours *after* the rain event." The trial court took judicial notice that the value of Plaintiff's home 72 hours after the rain event would have been $0.00. Further, the trial court found that, in 2016, the value of the land portion of Plaintiff's property was $25,500. Accordingly, it reduced $144,000 by $25,500 and awarded Plaintiff $118,500 for the damage to his house.

On May 8, 2018, the trial court, on remand from this Court, found that Mr. Rutherford's initial estimate did not take into consideration microbial remediation or restoration of the floors, noting that Defendant presented no additional evidence on the measure of damages. Additionally, the trial court found the testimony of Messrs. Hargrave, Morefield, and Little to be credible and the estimates recommended by their reports to be reasonable. Specifically, the trial court found that

> the total cost of repair as presented by [Plaintiff's] expert witnesses to be reasonable and proper to compensate him for the damage to his home. The damages include:
>
> - $24,678.84 (Robert Rutherford of Cook Claims)
> - $33,455.53 (Capital Construction's amendment to the Cook Claims estimate)
> - $60,791.75 (ServiceMaster by Cornerstone water/microbial remediation)
>
> The total cost of repair is the sum of these three figures – $118,926.12 – and should be awarded to the Plaintiff.

Defendant timely filed its second notice of appeal on May 23, 2018.

### ISSUES PRESENTED

Defendant raises two issues on appeal, reproduced as follows:

1. Whether the trial court's findings on costs of remediation were based on speculation and contingencies.
2. Whether the costs of repair and remediation awarded to Plaintiff are duplicative.

### STANDARD OF REVIEW

In non-jury cases, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo with no presumption of correctness. *See Armbrister*, 414 S.W.3d at 692. As is relevant here, we review a trial court's choice of the proper measure of damages de novo as a question of law. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005).

DISCUSSION

Defendant first asserts that the trial court's award of damages for repair costs and remediation is speculative and contingent and therefore may not be recovered. "Speculative damages, however, are only prohibited when the existence of damages is uncertain, not when the amount of damage is uncertain." *Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1990) (citing *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)). Moreover, "[w]hen there is substantial evidence in the record and reasonable inferences may be drawn from the evidence[,] mathematical certainty is not required." *Cummins*, 667 S.W.2d at 765. The existence of damages in this case is certain, and we conclude that the trial court's award of damages was not speculative or contingent.

According to Defendant, the award of damages is speculative because "Plaintiff offered no proof that mold or microbial growth was present[.]" This statement, however, is clearly contradicted by the evidence in the record. Mr. Little, the only remediation expert presented at trial, testified that, during his inspection of Plaintiff's home, he found wet materials on the ceilings, floors, and walls and water damage throughout Plaintiff's home. He also testified that he personally observed microbial growth within the house. As to the extent of the water damage and the ensuing microbial growth, Mr. Little testified that he classified Plaintiff's home as "Condition 2" for microbial growth and "Category 3" for water damage, the protocol for which requires the removal of all the affected materials that are not part of the structure holding up the home. Defendant claims that the trial court had found Mr. Little's testimony "unconvincing," but this statement is also not supported by the record. While it did initially express some hesitation as to the necessity for the estimated amounts provided by Plaintiff's experts, the trial court ultimately and explicitly concluded that *all* of Plaintiff's experts were credible and that the estimated amounts in their reports were reasonable.

Additionally, in support of its first argument, Defendant cites to this Court's ruling in *Durkin I*, quoting our decision as follows: "Still, we respectfully decline [Plaintiff's] invitation to award him $118,926.12 in damages based on the cost to repair evidence he presented to the trial court . . . . The proper measure of damages is the *reasonable* cost of repair." *Durkin I*, 2018 WL 1304922, at *5. Defendant's quotation, however, is selective and omits the following language: "[T]he trial court made no finding as to the amount that it would have awarded if it had utilized the cost of repair analysis."[5] *Id.* It was on

---

[5] Accordingly, the quotation reads in its entirety as follows:

> Still, we respectfully decline [Plaintiff's] invitation to award him $118,926.12 in damages based on the cost to repair evidence he presented to the trial court. As noted above, the trial court made no finding as to the amount that it would have awarded if it had utilized the cost of repair analysis. The proper measure of damages is the *reasonable* cost of repair.

this basis that we remanded the issue for the trial court "to make the necessary factual findings and an award of damages based on the reasonable cost of repair." *Id.* The trial court ultimately found Plaintiff's experts to be credible and their cost-to-repair estimates to be reasonable. Here, the existence of damages to Plaintiff's home is certain, and we therefore conclude that the trial court's award of damages was not speculative or contingent.

Next, Defendant asserts that the trial court's award of damages for repair costs and remediation is duplicative. After our review of the estimates provided by Messrs. Rutherford, Hargrave, and Little, we agree with regard to a portion of the trial court's award of damages for remediation.

Plaintiff obtained his own estimates from Mr. Hargrave of Capital Construction and Mr. Little of ServiceMaster by Cornerstone. Mr. Hargrave's estimate provided that it would cost $58,134.37 to perform the necessary repairs and reconstruction to Plaintiff's home. Part of Mr. Hargrave's estimate included a line-item listed as "General Demolition" for $11,713.06. Mr. Morefield, also of Capital Construction and Mr. Hargrave's superior, testified that this amount was a "flow through" based on a remediation estimate prepared by ServiceMaster by Capital, an affiliate of Capital Construction.[6] Accordingly, Mr. Hargrave's estimate provided for $11,713.06 in remediation costs. Mr. Little's estimate, on the other hand, covered solely estimated remediation expenses, providing that it would cost $60,791.75 to perform the necessary work. Our review of Mr. Hargrave's and Mr. Little's estimates reveals an overlap and a duplication of costs for the performance of the same remediation work. For example, both estimates include costs for the removal of all plaster ceilings, for the removal of the attic insulation, and for the removal and bagging of wet insulation.[7] Similarly, both estimates include costs for certain equipment, such as dumpsters, HEPA filters, and negative air fans. We are of the opinion that, by including in its award of damages the total costs for remediation from Mr. Hargrave's and Mr. Little's estimates, the trial court awarded Plaintiff duplicative damages for the same remediation work. Such duplication of damages is improper and the award should be reduced by the $11,713.06 in duplicative remediation costs.

Our review of the estimates provided by Messrs. Rutherford, Hargrave, and Little also revealed a discrepancy concerning the trial court's award of damages for the costs of removing and/or refinishing the wooden floors in Plaintiff's home. Defendant argues that the trial court erred in awarding Plaintiff costs for both. We agree.

---

*Id.* at *5.

[6] ServiceMaster by Capital and ServiceMaster by Cornerstone are two separate entities.
[7] While both Mr. Hargrave's and Mr. Little's estimates provide for the removal of the plaster ceilings, Mr. Little's estimate also provides for the removal of the drywall, the baseboards, and the trim in rooms of Plaintiff's home.

Mr. Rutherford's estimate did not include a cost for the repair of the wooden floors, and Mr. Rutherford himself testified that the wooden floors were not damaged and would not need to be refinished. Mr. Hargrave's estimate, on the other hand, did include a cost for sanding, staining, and refinishing the wooden floors. Mr. Little's estimate did not include a cost for sanding, staining, and refinishing the wooden floors, but it did include a cost for the complete removal of the floors. Plaintiff argues that, "[a]lthough the floors that are removed may not be refinished, if new wood floors are installed, they would have to be sanded and finished." Plaintiff's argument, however, neglects the glaring fact that there is no proof in the record regarding an award of costs for the replacement of the wooden floors. Moreover, Plaintiff even testified that he does not need the wooden floors replaced but instead needs them sanded, restained, and refinished.[8] Plaintiff's counsel articulated his client's desire on numerous occasions, as well. During opening arguments, Plaintiff's counsel stated:

> My client will tell you he's not here to receive a brand new house. What he wants is his home back. He wants his home back in a habitable safe condition. His floors in his home, as Your Honor may imagine, from Cooper-Young district were old hard wood floors but they were in good shape. He's not asking for them to be replaced. He needs them to be sanded and restained.

During closing arguments, Plaintiff's counsel reiterated the same: "Again, my client is not asking for brand new floors. He's fine with his floors. But you have heavy one to two-inch thick plaster falling on top of it, it needs to be sanded and restained." Considering the above testimony, we are of the opinion that, without any proof in the record as to the replacement of the wooden floors, the trial court erred in awarding Plaintiff the cost for the removal of the current floors, which is included in Mr. Little's estimate. The award should also be reduced by the cost for removal of the current floors contained in Mr. Little's estimate.

While we agree with the trial court's award of damages in this case based on the

---

[8] Plaintiff provided the following testimony regarding the wooden floors in his home:

> Q: You're not seeking damages relating to the paint and the termite; correct?
> A: Correct. I am not.
> Q: You just want your house floors sanded and restained?
> A: Yes, I do.
> . . . .
> Q: Do any of the floors in your home require replacement or can they be refinished?
> A: They can be refinished.

reasonable costs of repair, due to duplication in the award, we vacate the amount of the judgment and remand with instructions for the trial court to recalculate its award of damages in accordance with this opinion.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's method of awarding damages based on the reasonable costs of repairs, vacate the trial court's damage award, and remand the case for further proceedings consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE