# CHARLESTON.

## LINTON v. JOHNSON *et als.*

Submitted January 15, 1918.    Decided January 29, 1918.

1. BROKER—*Validity of Contract—Licensee.*

    The contract of a real estate agent or broker doing business in this state for compensation for making sale of land is not void because he had not at the time of the contract procured a state license as such, and the absence of such license constitutes no defense to an action by him for commissions earned under such contract.    (p. 571).

2. SAME—*Right of Commission—Default of Purchaser.*

    Where such real estate agent or broker has procured a purchaser and fully complied with the terms and conditions of his contract, and the parties, the vendors and the purchaser have entered into a valid and binding contract of sale and purchase, such agent or broker, unless his contract otherwise provides, can not be deprived of his right to the compensation stipulated in his contract, because of the default of the purchaser to afterwards comply with some of the terms and provisions of his contract.    (p. 572).

Error to Circuit Court, Monroe County.

Action by T. J. Linton against F. P. Johnson and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Thos. N. Read,* for plaintiffs in error.

*John W. Arbuckle,* for defendant in error.

MILLER, JUDGE:

In an action by plaintiff, a real estate agent or broker, against defendants, for commissions alleged to be due him for selling or aiding in making sale of a farm belonging to them, all instructions to the jury proposed by defendants were rejected, and the jury, on a peremptory instruction by the court to do so, found for plaintiff the sum of $618.75, with interest from April 18, 1914, and the judgment complained of was in accordance with the verdict.

The contract between the parties which was in writing, dated March 9, 1914, recited that defendants, parties of the

first part, had that day placed said land in the hands of plaintiff for sale as agent, and that in consideration of his listing the same for sale and of such efforts as he should make to secure a purchaser thereof and of advertising the same they covenanted and agreed to pay him or his assigns five per cent. commission on the gross amount of said sale, payable out of the cash payment. And another provision of said agreement was, that should the first parties themselves make sale of said property, or through another agent or agents, then plaintiff should be entitled to no commissions; but that should the plaintiff introduce a purchaser, or influence, or aid, in making such sale, then defendants thereby agreed to pay him the commissions as therein provided. And under the heading "Description of Property", including number of acres, number of acres under cultivation, kind of house, barns, how fenced, water, etc., is the following: Terms, "half cash and balance to suit first parties."

Besides the common counts in assumpsit, the declaration also contains a special count on the contract. We think the declaration good and that the demurrer thereto was properly overruled.

The material facts are not controverted, indeed, for the most part, they are in writing. It is shown that pursuant to the contract plaintiff advertised the land for sale, and that later, on March 28, 1914, at Ronceverte, Greenbrier County, he produced to defendants· and proposed as a purchaser of said land one Nelson White; that on that day they then and there entered into a contract in writing with him, under seal, the first parties being represented by M. A. Johnson and F. P. Johnson, two of the owners of the land, who signed the contract, which all parties thereafter ratified, and which was also signed and sealed by White, wherein it was stipulated that defendants had that day sold to White the tract of 275 acres of land in Wolf Creek District in Monroe County, known as the "widow Johnson farm" for the sum of $12,375.00, upon the following terms, namely, $1,375.00, in cash to be paid on or about April 15, 1914, at the town of Alderson, and where as the contract recites it was understood that all the parties of the first part were to meet and sign a contract

in the nature of a title bond, and when said White was at the same time to execute to the parties of the first part his negotiable note for the sum of $5,000.00, payable to the order of A. E. Johnson at the First National Bank of Alderson, to be due and payable November 15, 1914, with interest at three per cent., and for the residue of the purchase money he was to also execute to the first parties his two negotiable notes, one for $4,000.00, due November 1, 1915, with interest, and the other for $2,000.00, due November 1, 1916, with interest; and among other provisions of the contract, the eighth paragraph was as follows: "Both parties to this contract bind themselves in the penalty of $1,000.00, payable to each other for the faithful performance of various terms of this contract."

Defendants not denying the making of this contract, nevertheless rested their defense on two grounds: First, that plaintiff was not a licensed real estate broker; second, that White had not fully complied with the terms of the contract, in the particulars, (a) that he had failed to make or provide for the cash payment of $1,375.00; and (b) had failed to secure the endorsement of A. E. Johnson on the note for $5,000.00, on or at any time after April 15, 1914, when by the provision of the contract the parties had agreed to meet at Alderson, and when defendants were to execute the contract in the form of a title bond, etc., as stipulated therein, and that plaintiff was present at that time and had failed to secure from White the cash payment and secure the endorsement by said A. E. Johnson on said note, it being their position that under the contract plaintiff had undertaken to do this as a condition of his compensation and of his right of recovery in this action.

On the first proposition of defense the court ruled out the evidence, on the ground that the want of license, if plaintiff in fact had no license, constituted no defense. In this ruling we think the court was clearly right. The contract of a real estate agent or broker, though without license, as required by statute, is not absolutely void, the statute not rendering it so, but imposing only a penalty. *Ober* v. *Stephens,* 54 W. Va. 354; *Cobb* v. *Dunlevie,* 63 W. Va. 398.

The second defense we also think is groundless. Plaintiff so far performed the very terms of his contract as to entitle him to his commissions. He brought the defendants a bona fide purchaser, one financially able to perform his contract, if that fact is material. The eighth paragraph of that contract to which we have referred and quoted made it in terms absolutely binding and bound the parties each to the other in a penalty of one thousand dollars to the faithful performance of the terms thereof. And nowhere and in no contract subsequently made did plaintiff waive or relinquish his rights under his contract because of the alleged neglect or failure of White to make the cash payment in April, 1914, at the meeting at Alderson. White did at that time execute all the notes called for by the contract, and just as the contract provided, and for the cash payment it seems it was then agreed between the parties that that sum was to be raised by White's note endorsed by A. E. Johnson, the payee of the note, for $5,000.00; and it is claimed by defendants who happened to be present, but which plaintiff denies, that he agreed to secure the endorsements of these notes, and that the notes were turned over to him for that purpose. Plaintiff contends that M. A. Johnson proposed to secure the Johnson endorsements, but admits that as an accommodation to the parties the notes were handed him to be carried to A. E. Johnson, and that his duty to the parties in that behalf was discharged when he delivered the notes to A. E. Johnson, as he did the same day, on his way home from the meeting at Alderson, and that his entire connection with these notes then terminated, and besides that his rights under his contract were in no way involved in the transaction at Alderson, in April, or conditioned on the consummation of the contract of sale of March 28, 1914. His object in being present at the meeting at Alderson was simply to look after his commissions which were to be paid out of the cash payment.

The evidence shows that the title bond of defendants, and White's notes, except the two sent to A. E. Johnson, were left in escrow in one of the banks at Alderson, of which one of the defendants was cashier, awaiting the return of the other notes endorsed by A. E. Johnson, and these never hav-

ing been returned, nor the transaction further consummated, it is insisted plaintiff is not entitled to recover commissions according to the contract.

It is quite true, as counsel for defendants contend, that before plaintiff can recover the compensation called for by his contract he must show performance of the contract on his part. *Parker* v. *Building & Loan Association,* 55 W. Va. 147, and cases cited. Has he not done this? He produced a responsible purchaser, with whom the defendants entered into a valid and enforceable contract. We think this was as far as he was obliged to go. Of course his compensation was to be paid out of the cash payment which was never in fact made, but by no fault of the plaintiff. If the contract was a good and enforceable one were not defendants bound to enforce it, or if not, and they in any way released the purchaser, and failed to collect the purchase money, why should the plaintiff be denied the benefits of his contract? We do not see upon what legal principle they can defend this action on that ground. That plaintiff listed and advertised the land for sale, and made effort and actually secured a purchaser, with whom the defendants entered into a binding contract as stated is admitted. Did that not amount to a literal performance of his contract? If not, where in the contract was he required to do more? That the parties slightly modified the terms as to the cash payment is immaterial. This could not deprive plaintiff of his compensation. The law stated in our decisions and the universal rule respecting such agency is that where the agent has done all that his contract requires of him, and unless limited by some express provision thereof, he is entitled to the compensation called for by the contract, and that no subsequent default of the purchaser or of the other parties can defeat his right to the stipulated commissions. *Hugill* v. *Weekley,* 64 W. Va. 210, 212, and cases cited.

On the trial plaintiff introduced in evidence, over the objection of defendants, the record of a judgment recovered by them against White, the purchaser, for $700.00, by way of compromise, found on the penal or forfeiture clause of said contract, and wherein it was alleged by defendants that they

had entered into a valid and binding contract with said White, and that by reason of his breach of the terms thereof they were entitled to recover the penalty therein provided. The purpose of this evidence was of course to show that each of the parties to that contract regarded it as binding and-enforceable. Whether this record was legal and competent on any issue in the case is perhaps unnecessary to be decided, for in view of our construction of the contract it was in fact a legal and binding one, and plaintiff having performed his contract was entitled to his compensation, and certainly so after defendants had elected not to otherwise enforce it by suing for the penalty and thereby depriving themselves of the right to demand specific performance of the contract of sale to and purchase by White.

These conclusions sufficiently dispose of all other errors assigned and relied on for reversal. As matter of law plaintiff was entitled to judgment.

The judgment will, therefore, be

*Affirmed.*