HATTIE E. CLARK *v.* WILBUR L. MATHENY

(No. 8599)

Submitted September 22, 1937. Decided October 12, 1937.

MAXWELL and FOX, JUDGES, dissenting.

*John T. Copenhaver* and *L. S. Trotter,* for plaintiff in error.
*Wilbur C. Frame,* for defendant in error.

HATCHER, JUDGE:

The plaintiff, learning that defendant owned real estate he would sell, proposed through a third party to "turn over" a prospect to him if he would pay her $150.00 in case he sold the property to "the people" she "introduced." The intermediary testified that defendant accepted the offer as made, and that his acceptance was communicated to plaintiff. Thereupon she introduced Vaughn Lilly to defendant, who himself negotiated a sale of the property to Lilly's wife. The latter admits that the larger portion of the consideration was paid by her husband. About a month before defendant met the Lillys, they were shown the property by a real estate dealer who

was said to have it "optioned" (terms not disclosed). They considered his price "too high", and said they were not "interested", and had "dismissed" his offer from their minds. When Lilly informed defendant of this, he said, according to Lilly (undenied), that he had the property "listed" with the dealer, whose "lease" would soon expire, and then defendant would deal directly with them "at a much lower figure." However, he did not wait the termination of his arrangement with the dealer (whatever it was), but obtained the dealer's consent to negotiate directly with the Lillys and unaided by anyone, consummated the sale at a price lower than that made by the dealer. Defendant had never met either of the Lillys before the intervention of plaintiff. He testified that he agreed to pay plaintiff the commission only if she herself sold the property. She recovered a judgment for $150.00.

Plaintiff admitted that she had sold real estate for herself "and occasionally for someone else" and that she was not a licensed broker. Defendant questions her right to recover a commission on the ground that she was practicing the business of a real estate broker, and a license was requisite to validate her acts in that business. Her contract for the commission is not invalidated for that reason. *Ober* v. *Stephens*, 54 W. Va. 354, 46 S. E. 195; *Linton* v. *Johnson*, 81 W. Va. 569, 94 S. E. 945.

Defendant's main defense before the trial court was that plaintiff was not *the procuring cause* of the sale and is therefore not legally entitled to recover. Plaintiff responds that she did not propose to become *the procuring cause* of the sale or to aid in making the sale, but did propose merely to introduce a prospect; that she was to be paid $150.00 *for that introduction* if the prospect became a purchaser; and that the sale to Mrs. Lilly was in effect a sale to Mr. Lilly, plaintiff's prospect. Her contention is legally sound. In the absence of a special contract, a broker claiming a commission on the sale of property must show that he sold it or was the procuring cause of the sale. 2 Am. Juris., subject Agency, sec. 172. But by special contract, he can engage to do much less, upon condition that he shall be compensated in case of sale. If

he so engages, and he does what he agreed to do, and the sale is made, he is entitled to compensation. Mechem on Agency (2d Ed.), sec. 2433; *Tuffree* v. *Saint,* 147 Iowa 361, 126 N. W. 373; *Hugill* v. *Weekley,* 64 W. Va. 210, 213, 61 S. E. 360, 15 L. R. A. (N. S.) 1262.

The proposition was advanced during oral argument that the law would imply that defendant, in contracting with plaintiff, contemplated a prospect to whom the dealer had not shown the property. This proposition might have merit if the relationship between defendant and the dealer were shown to warrant the implication. But their contract, though in writing, was not introduced in evidence. It was referred to by both as an "option", and by defendant also as a "lease" and as a *listing.* The term *lease* was obviously a misnomer. If an option, was it one to buy or one to sell? If to buy, the relation of optionor and optionee existed and that relationship did not confer on the dealer, before purchasing himself, the right to sell at all. If to sell, and that seems the better view, the relation of principal and agent existed. *Chezum* v. *Kreigbaum,* 4 Wash. 680, 30 P. 1098; *Steyskal* v. *Radford,* 166 Mich. 365, 130 N. W. 601; *Burnett* v. *Potts,* 236 Ill. 499, 86 N. E. 258; 66 C. J., subject Vendor and Purchaser, section 14. Such an agency is not necessarily exclusive. And whether the dealer's agency herein was exclusive or not, would be material in determining this implication. Defendant's conduct after meeting the Lillys could be construed as supporting an inference of exclusive agency; but the fact that he contracted with plaintiff, at all, is not consistent with that inference, and the terms of the contract as stated by him, actually oppose it. Here is his own version of his proffer to her: "I told her I would give her—I had promised Mr. Carson (the dealer) $150.00—and I would give her the same, if she sold the property." This testimony demonstrates that then he contemplated giving to her equal authority with the dealer, which we do not suppose he would have attempted, had he felt obligated exclusively to the dealer. Under this view, since the dealer's efforts to sell to the Lillys had definitely failed, his unsuccessful contact with

them would not preclude another agent or the defendant himself from later selling to the same parties, even at a reduced price. *Crain* v. *Miles,* 154 Mo. App. 338, 134 S. W. 52; Mechem, *supra,* sec. 2442; 9 C. J., subject Brokers, section 89 (on p. 602). If the law did not require defendant to recognize any equities in favor of the dealer because of his contact with the Lillys, the law assuredly would not imply that defendant did so. However, the terms of his so-called option to the dealer not having been precisely disclosed, a court is not in position to say what implication, if any, on account thereof, might attach to his contract with plaintiff. "The fact used as the basis of the inference, the *terminus a quo,* so to speak, must be established in a clear manner, devoid of all uncertainty." Chamberlayne, Evidence, Section 1029. Accord: *Osborne* v. *Ramsey,* 191 Fed. 114, 120; *St. Louis & S. F. R. Co.* v. *Model Laundry,* 42 Okla. 501, 141 P. 970, 980; *Crotty* v. *Virginian Ry. Co.,* 115 W. Va. 558, 563, 177 S. E. 609; *State* v. *Corbin,* 117 W. Va. 241, 186 S. E. 179, 183; 22 C. J., subject Evidence, Section 27.

Being of opinion that the conflict in evidence between the parties as to the terms of their contract was a jury question, and perceiving no error of law in the rulings of the trial court, the judgment is affirmed.

*Affirmed.*

MAXWELL, JUDGE, dissenting:

Judge Fox and I cannot concur in this decision. In our opinion, there was implicit in the contract between plaintiff and defendant the intent and purpose that an introduction by her to the defendant of a prospective purchaser should be of a person whose attention had not theretofore been directed to the property by the defendant or his agent. The fact is that a licensed broker representing the defendant had already shown the property to the plaintiff's prospect. That which had been done by the defendant's agent was tantamount to having been done by himself. The plaintiff interjected no new blood into the situation. In our judgment, she is not entitled

to be compensated for reaching into a matter already under way, and at most, merely lending impetus thereto at a period of inactivity. We think the trial court, as a matter of law, should have directed a verdict for the defendant. We would reverse the case.

Judge Fox concurs in this note.