# E. O. BAILEY & CO., Inc. v. UNION PLANTERS TITLE GUARANTY CO.—232 S. W. (2d) 309.

Western Section. March 23, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

440

442

Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, for complainant.

Canada, Russell & Turner, of Memphis, for defendant.

ANDERSON, P. J. This suit presents a controversy over the right of complainant, a real estate broker, to a commission on the price obtained by the defendant in the sale of a building owned by it and sold to a third party. From a decree for the complainant, holding it entitled to the commission and awarding a recovery accordingly, the defendant appealed.

Complainant's claim is based upon a provision in a written lease negotiated by it, whereby the defendant leased for a term of years a business house to two partners operating under the name of Thomas Bros. Candy Co. This provision is as follows: " '28. Agency and Commission Agreement—This lease was negotiated by E. O. Bailey & Co., Inc., acting as Agent for the Lessor, and Lessor agrees to pay E. O. Bailey & Co., Inc., the usual commission (in accordance with the rules of the Real Estate Board of Memphis) for services in negotiating this lease; also to pay E. O. Bailey & Co., Inc., the usual commission for any subsequent lease that may be entered into by Lessor with the Lessee, covering the within leased premises, or additions thereto for which an additional rental is paid by the Lessee. The Lessor also agrees to pay to E. O. Bailey & Co., Inc., the usual sales commission in the event the within leased premises are sold to Lessee herein.' "

The principal contentions are (1) that this provision was "a mistake as to both parties and an unauthorized inclusion by the draftsman of the instrument" and that

therefore this Court in the exercise of its equitable jurisprudence should "reform the instrument to conform to the intention of the parties by striking Clause 28 from the instrument"; (2) that the agreement contained in the Clause is unenforceable for lack of a consideration; (3) that if this be not true, then, properly interpreted, the provision means that the broker would be entitled to a commission only in the event his efforts were instrumental in bringing about a sale of the property to the lessee; that this was not the case, and hence the complainant was entitled to no commission; (4) that the complainant cannot maintain this suit because it was not actually a party to the contracts; (5) that notwithstanding the contract recites that the complainant was the agent of the defendant, he was in fact acting for the benefit of the lessees and hence a recovery should be denied under the general rule that an agent for one party cannot make a contract for compensation with the other party to the transaction; and (6) that the property was not sold to the partnership named as lessees in the contract but to the Thomas Wiener Company, a Tennessee corporation, and hence the condition for the payment of the commission was not fulfilled.

Chancellor Creson filed an outstanding opinion containing a comprehensive and discriminating analysis of the issues presented and the authorities deemed controlling. His statement of the case and the controlling facts is not controverted and we adopt it. It is as follows:

"In this case complainant, a licensed real estate agent or broker, sues the defendant, Union Planters Title Guaranty Company, for a real estate commission in the amount of $2,780.00, alleged to be due and owing by

reason of the sale by defendant of a plot of ground containing a three-story brick building, known in the record as Belmont Candy Company Building, located in Memphis, Shelby County, Tennessee, for the sum of $86,000.00 to Thomas-Wiener Company, a Tennessee corporation.

"The background of the present controversy is that Thomas and Wiener, confection manufacturers, were in business as equal partners, operating under the name of Thomas Bros. Candy Company, for a period of many years prior to February 1, 1946. Sometime prior to September 1, 1936 these partners began negotiations with defendant Title Guaranty Company for lease of the ground and building involved. The two partners especially desired the premises because the building contained certain facilities, characteristics and equipment adapted to confection manufacture. After negotiations had proceeded inconclusively for sometime between Clyde Denton, representing defendant on the one hand, and Wiener on behalf of the partnership, primarily over the amount of rental, the partners secured the assistance of E. O. Bailey of the complainant Company.

"A lease of the premises for the period of September 1, 1936 through August 31, 1941 was finally concluded, with Bailey acting for the partners. This lease provided for a commission to Bailey on the agreed rental; but the amount necessary to defray this commission was added to the agreed rental for the premises. Through the term of this lease the rent was collected by Bailey, commission deducted and balance remitted to the defendant Title Guaranty Company. At the outset the attitude of Clyde Denton toward E. O. Bailey & Company entering the transactions between Thomas-Wiener Company and the defendant Title Guaranty Company became immediately

evident. Denton was opposed to E. O. Bailey & Company participating and vocally so. As stated, the rent previously agreed to Thomas and Wiener, partners, was raised to the extent of the commission.

"At the expiration of the aforementioned leased on August 31, 1941, the partnership, Thomas Bros. Candy Company, continued to occupy the premises on a month to month rental basis while sporadic discussions for a new long-term lease went on. The defendant Title Guaranty Company desired a very substantial increase in rental as part of any new lease for a period of years; more than the partnership was inclined to pay. However, early in 1943 another prospective tenant became interested in the premises and this factor served to materially increase the tempo of negotiations between the partnership and defendant Title Guaranty Company. The partners importuned Denton to not lease the premises to others while the discussion of a new five-year lease continued. With matters in this state the partners again sought the intervention of E. O. Bailey & Company in the negotiations and were advised by Bailey of their need for a long-term lease or outright purchase of the property. The Title Guaranty Company was not then interested in a sale of the property and Bailey pursued discussions with Denton on the terms of lease. Denton was adamant in his position that the monthly rental should be $700.00. Bailey was unable to obtain any reduction. Upon Bailey's appearance in this transaction, Denton again evidenced his opposition and superimposed upon the $700.00 monthly rental an additional $50.00 monthly to satisfy Bailey's commission. This new lease was finally closed as of March 1, 1943 to expire on February 28, 1948; but for reasons serving and

at the instance of the partners, the monthly rental was fixed in the written agreement at $1200.00 per month for the first year, $1000.00 per month for the second year, $550.00 per month for the third year and $500 per month for the remaining two years. The complainant realtors continued collection of the monthly rental, deduction of commission and remittance of the balance to the defendant Title Guaranty Company, lessor.

"Matters continued on between the parties as above outlined until June, 1946, the defendant Title Guaranty Company decided that market conditions were favorable to a sale of the leased premises and through Denton brought this change of attitude to the notice of the lessees. Though unknown to the defendant, Title Guaranty Company until sometime later, the former partnership business, Thomas Bros. Candy Company had been incorporated as of February 1, 1946. From that time on the corporation had been the occupant of the leased premises in the place and stead of the former partnership and had regularly paid the stipulated monthly rental. This corporation, Thomas-Wiener Company, took over all of the assets, except some cash in bank, and assumed all liabilities of the former partnership, carried on identically the same business and the ownership of the corporation continued in Thomas and Wiener in the same proportion as their previous partnership interests. The change from partnership operation to the corporate form was made for tax purposes, as was so common at the time.

"Intermittent conferences between Denton on behalf of the defendant Title Guaranty Company and Thomas with respect to purchase and sale continued. Thomas and Wiener were discussing advisibility of their Com-

pany's purchase of the property at the defendant's proposed figure of $85,000.00 with E. O. Bailey. Thomas and Wiener entertained doubt that the property was worth in excess of $65,000.00 and were much concerned as to what course to pursue. Bailey advised them that, under all the circumstances, the property should be bought at the Title Guaranty Company's figure. This participation of E. O. Bailey was unknown to the defendant Title Guaranty Company until very near the conclusion of the trade.

"Upon final agreement as to the purchase price of $85,000.00, Denton set about to prepare the contract papers; and it was then ascertained by him for the first time that the lease agreement contained the clause around which the present litigation revolves.

· · · · · · ·

"Denton promptly contacted Thomas and Wiener and advised them of the abovequoted provision coming to his notice. He further advised that the Title Guaranty Company felt no obligation to complainant realtors and that if any such commission was to be paid to complainant E. O. Bailey & Co., agent, the sale price of the property would have to be raised to $87,750.00 so as to cover such commission. Denton's position was that the price was $85,000.00 net and that his Company would not stand the commission. It was then suggested that Thomas and Wiener would take the matter up with complainant, E. O. Bailey & Co. and determine whether complainant realtor would waive the commission. The Title Guaranty Company was vehement in its attitude that no commission was due complainant; but E. O. Bailey & Co., refused to waive.

"At about this same time in the course of events, it was made pointedly known to both complainant and defendant that the business of Thomas Bros. Candy Company had been incorporated as Thomas-Wiener Company, a Tennessee corporation. Further discussions transpired with reference to the complainant's claim of commission, whether the Thomas-Wiener Company should pay the Title Guaranty Company its net price and assume liability to complainant agent, whether consideration should be given to the purchasers for the payment of rent over the average rental during the first three years of the lease; all of which culminated in agreement of defendant Title Guaranty Company to accept the sum of $86,000.00 for the property and 'take the chance' of liability to complainant realtors for the sales commission.

"Final contract for sale of the property involved was closed under date of September 9, 1946, between the defendant, Union Planters Title Guaranty Company and Thomas-Wiener Company for a total price of $86,000.00. Thereafter, on December 17, 1946, complainant brought the present original bill against the defendant, lessor-vendor, to recover commission on the full price paid.

"On the above facts and some others specifically hereinafter mentioned, the complainant contends that, (1) Paragraph #28 of the lease agreement providing that the lessor agrees to pay to E. O. Bailey & Co., Inc., the usual sales commission in event the leased premises are sold to lessee is a valid and legally binding obligation and (2) that the conditions of said Paragraph #28 have been performed. Complainant points out that the agreement of the defendant lessor under Paragraph #28 is legally supported by the original consideration flowing from the complainant agent in the negotiating of

the lease agreement. Complainant says that there was, in fact, other subsequent and adequate performance on the part of complainant agent to sustain its claim.''

■ As to the first contention, namely, that the particular provision in question was the result of mutual mistake and hence the lease should be reformed by striking said provision from the instrument, it would be enough to say that, apart from the insufficiency of the evidence to show the essential facts, the pleadings would not authorize such action in any event. The defendant by its answer and the amendment thereto seeks no affirmative relief. Its position is purely defensive. Therefore relief by way of reformation grounded on the equitable principle of mutual mistake or mistake on one side and fraud on the other, would be beyond the scope of the pleadings. :

■ But if it were otherwise the result would be the same. We have no doubt that at the time he executed the lease on behalf of the defendant, Mr. Denton was unaware that it contained the provision sued on; but under the facts of this case this is of no avail. As they arise upon the present record, the questions must be determined not upon equitable principles but upon those applicable in cases of purely legal cognizance. Where this is true, as the chancellor so clearly pointed out, a party called upon to meet his obligations under a contract will not be heard to say that he did not read it when he signed it, or that he was unaware of what it contained. Any other view would throw overboard the principal basis of our business and commercial life. DeFord v. National Life & Accident Ins. Co., 182 Tenn. 255, 185 S. W. (2d) 617; Lockhart v. Moore, 25 Tenn. App. 456, 159 S. W. (2d) 438.

Hence the solution of the problem is to be approached upon the assumption that the language of the contract was that of all of the parties thereto and was purposely used by them as giving expression to their intention. The intention thus expressed must be given effect even though not actually entertained by one or more of them. Home Beneficial Ass'n. v. White, 180 Tenn. 585, 177 S. W. (2d) 545; Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S. W. (2d) 1059. If the language is susceptible of two interpretations, one of which is reasonable and the other unreasonable when tested by the conduct of ordinarily prudent men similarly situated, that will be adopted which is in accord with the justice of the case. But if not so susceptible, the Court has no alternative and must give effect to the intention expressed by the language used, whatever may be thought about the harshness of the result, where the question is merely one of interpretation and there is no charge of accident, fraud or mistake. Nashville Terminal Co. v. Tennessee Central Ry. Co., 2 Tenn. App. 646; Dark Tobacco Growers' Co-op. Ass'n. v. Mason, 150 Tenn. 228, 263 S. W. 60; Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn. 513, 71 S. W. (2d) 1059; Home Beneficial Ass'n 'v. White, 180 Tenn. 585, 590, 177 S. W. (2d) 545.

In the primary task of ascertaining the intention of the parties, the surrounding circumstances may be utilized to put the Court as nearly as may be in their position at the time the agreement was made. Holmes v. Elder, 170 Tenn. 257, 94 S. W. (2d) 390, 104 A. L. R. 1282. But they cannot be used for the purpose of adding a new and distinct undertaking, or giving effect to an intention which cannot be fairly said to be expressed

by the language actually used or necessarily implied from the language illuminated by the circumstances. Mills v. Farris, 59 Tenn. 451; Ivy v. Binswanger & Co., 141 Tenn. 568, 214 S. W. 74; Perkins Oil Co. v. Eberhart, 107 Tenn. 409, 64 S. W. 760.

With these general principles in mind, we proceed to consider the defendant's second and third contentions as hereinabove set out. An interpretation of the agreement will dispose of them without separate consideration.

A reference to the authorities relied upon by the defendant will help focalize the questions presented. Of these, the case of Tomlinson v. Meader, 38 N. Y. S. (2d) 291, 294, decided by the Supreme Court of Washington County, New York, is particularly stressed. In that case the defendant listed her property with a real estate broker and authorized him to negotiate a sale for a specified price. She further agreed that "if the same is sold or traded to anyone procured or introduced by you, directly or indirectly, at that price or any other price accepted by me, I agree to pay, as a commission thereon, 10 per cent upon the sale price. Commission to be due and payable when the contract of sale is executed." The defendant had listed the same property with other brokers and through one of them, Ferguson, sold the farm to one Jenkins, who had been introduced to the defendant by the plaintiff. The other broker, Ferguson, came into the picture after the plaintiff advised the defendant that the deal with Jenkins was off.

In denying a recovery, the court recognized that the defendant could enter into a brokerage agreement which would vary to any extent she might think proper the usual rule by which the compensation of a broker is

determined; that she could, if she chose, agree that if she or anyone else made a sale of her property to one "introduced" by the plaintiff, she would pay plaintiff a commission whether or not his efforts procured the sale. Nevertheless the court held that this was not what the parties intended.

Camp v. Hollis, 332 Ill. App. 60, 74 N. E. (2d) 31, is also strongly relied upon by the defendant. In that case a real estate broker sought to recover a commission on the sale price of a piece of property on the strength of an oral contract notwithstanding that the transaction was not consummated through his efforts. In denying a recovery, the Court held that when properly interpreted, the contract did not provide for the payment of commissions except upon condition that the broker should be instrumental in procuring the sale to be made. The rationale of the decision is that under the contract as pleaded, the language was susceptible of two constructions, leaving to the court the opportunity to adopt that which was the more reasonable when judged by what was fair and customary in similar situations. In support of its conclusion, the Court reviewed a number of authorities, including Tomlinson v. Meader, supra, in each of which a recovery by the broker was denied because the particular contract when properly interpreted required the performance of services by the broker which he did not perform.

It would serve no useful purpose to repeat the review of authorities by the Illinois Court. A factor among others which, in our opinion, distinguishes all of them from the present case, is that in each, either a sale, purchase or exchange of property was contemplated at the time the contract was made. In other words, the subject

matter was either a sale, exchange or purchase, and the broker was employed by the property owner in that connection. The question for decision in each involved the rights and obligations of the broker in connection with a contemplated transaction of that character.

That is not the situation in this case. When the contract is considered as a whole, it is obvious that complainant was not employed by the defendant to sell the property, nor was it listed with him for that purpose. Indeed, the property at that time was not for sale. Upon the other hand, the defendant had definitely decided not to sell it and the lessees then had no intention of purchasing it. The object of the negotiations which led to the contract was a lease not a sale. That was the object to be accomplished and which was in fact accomplished. In determining the nature and extent of the broker's rights and obligation, the language of the provision sued on must be interpreted in the light of these facts.

But the defendant contends that it was necessarily implied that the commission would be paid only in the event the broker effected a sale. To sustain this contention would be, we think, to make an entirely new and different contract. It is true that an unexpressed obligation will be implied when it is clear that it was intended. Big Cola Corp. v. World Bottling Co., 6 Cir., 134 F. (2d) 718, and cases cited. But will or purpose is an essential element of such a contract. Crouch v. Gray, 154 Tenn. 521, 290 S. W. 391, 50 A. L. R. 1023.

No implied obligation can exist upon a point which it is apparent was not in the minds of the parties when the contract was executed. Nor can there be any justification for raising by implication a promise which

speaks contrary to the intention of the parties as gathered from all of the terms of the contract considered in the light of the surrounding circumstances. 12 Am. Jur. 767, 768.

To raise by implication a condition in the present case that the complainant was entitled to a commission only in the event he procured the sale to be made, it would be necessary to raise by the same process a corresponding proposal on the part of the defendant to sell the property if the broker procured a purchaser, ready, able and willing to buy on the defendant's terms. Manifestly, for several reasons, this would not be justified. In the first place, as said, there is nothing either in the contract or the surrounding circumstances to indicate that the defendant was willing to sell the property. The evidence is to the contrary. In the next place, the proposal stated could not be implied for lack of anything to indicate the essential terms of the sale, as, for instance, the price for which the defendant would sell.

As already stated, there is a different situation where the owner of the property has manifested a willingness to sell by listing the property with a broker and specifying the terms on which he will complete the transaction if a purchaser is found. See 8 Am. Jur. 1077 et seq.

The question immediately under consideration is determinable by the application of the canon of construction which justifies the consideration of the object sought to be accomplished by the parties in executing the contract. As applied to a situation of the kind in hand, if the object is a sale, that is one thing; if the object is not a sale and if there is to be found in the language used no manifestation of an intention or a willingness to sell, there can be no justification for reading into the

contract rights and obligations that usually attend such circumstances.

Hence, we agree with the view of the learned chancellor that the obligation of the defendant to pay the commission did not relate to future services expected of the broker in connection with a sale of the property if the defendant ever decided to sell, but to services which he had already performed in negotiating a lease. It was a promise by way of additional compensation of a contingent nature for services in that connection. It proceeded upon the theory that every tenant is a potential purchaser and the service of the broker in placing the tenant in the property increased the possibility of a sale if and when the owner became desirous of disposing of it. When considered in the light of the surrounding circumstances and the object to be accomplished, the language, we think, is reasonably susceptible of no other construction.

The particular contract provision under consideration appears to be novel and there is a dearth of authority on the question of its proper interpretation. The chancellor in his opinion refers to the only precedents which have been discovered. These are typified by the case of Burt v. Brownstone Realty Co., 95 N. J. L. 457, 112 A. 883, 884. In that case the contract relied on was a provision in a lease reading as follows: ''In consideration of services rendered by —— as agents of the lessor in procuring the within named tenant for the leased premises, and the further consideration hereinafter named, said lessor agrees with said agent that they shall be and remain agents for said lessor and said leased premises mentioned so long as said lessee is a tenant under this lease, or any renewal thereof, or any new

lease; said agent is to receive a commission of four per cent on the amount of rent actually paid by the lessee, and said agent agrees, if required by said lessor, in consideration of said commission, to endeavor to collect the rent as it falls due; and in the event that said lessee should purchase the leased premises during the term of this lease, or any renewal or new lease thereon, then said lessor agrees to pay said agent a commission of two per cent. upon the purchase price.' ''

The tenant had been procured and the lease negotiated by a real estate broker who collected the rents and remitted to the landlord. During the term of the lease the lessor and the lessee agreed on a sale of the property, which was carried out without consulting the broker, who, upon learning of the transaction claimed a commission on the sale price. In a suit by the broker for the commission, it was contended by the lessor that since the broker had not been instrumental in effecting the sale, he was not entitled to the commission. In holding this contention untenable, it was said: ''It is not an agreement to pay 2 per cent. on the purchase price for the services of a broker in effecting a sale; on the contrary, it is an agreement to compensate the real estate agents for negotiating a lease and endeavoring to collect the rent as it falls due; for these services they are to receive a commission of 4 per cent. on all rent and of 2 per cent. on the sale price in case the landlord sells to the tenant. This makes the instrument as between the parties merely a contract at common law to pay certain sums of money in consideration of certain specified services, not including the effecting of a sale . . . .''

It was further contended by the defendant that there was no consideration for the promise to pay the commis-

sion. The Court held that "there was evidence to show the performance of services within the language of the contract, and however insignificant that may have been in fact—a point on which we do not pass—their adequacy as a consideration is not a subject of inquiry either here or before the jury".

A somewhat similar provision was before the court in Comly v. First Camden Nat. Bank & Trust Co., 36 A. (2d) 591, 593, 23 N. J. Misc. 123, where, after quoting the above passage from Burt v. Brownstone Realty Co., the court said: "The reward was both in the payment of a percentage of the rents collected regardless of whether the service was rendered by the agent or not, and for further compensation based upon a percentage of the sales price of the premises if made to the tenant."

A similar provision was given the same interpretation in Bacharach v. Mitnick, 121 N. J. L. 401, 3 A. (2d) 92, where, in support of the motion for a nonsuit, it was contended by the defendant that there was no allegation that the broker was authorized by the defendant to sell the property. The court said that this contention was a misconception of the theory upon which the action was grounded; that the suit was based not upon an agreement merely to pay a commission on the purchase price for services of the broker in effecting a sale, but upon the theory that the proviso in the lease constituted an agreement supporting compensation to the broker for negotiating a lease and endeavoring to collect the rent as it fell due; that for these services the broker was entitled to receive the specified commission on all the rent and that specified on the sale price in case the landlord sold to the tenant.

In support of his conclusion, the chancellor also cited Clark v. Matheny, 119 W. Va. 264, 193 S. E. 800, as being in point in principle upon the proposition that while in the absence of a special contract a broker claiming a commission on the sale of property must show that he sold it, or was the procuring cause of the sale, yet by special contract he can engage to do much less upon condition that he be compensated in case of a sale and that if he so engage and do what he agreed to do and the sale is made, he is entitled to the compensation.

There are many authorities to this effect, including Restatement of the Law of Agency, by the American Law Institute, Section 448.

We think there is no escape from the conclusion that the reasoning of the foregoing authorities is equally applicable and is controlling in the present case.

In support of its fourth contention grounded upon the assumption that the complainant was not actually a party to the contract, it is argued that ''for a third party to enforce a contract, it must appear that the parties contract with the express intention of benefiting said party'', and ''since such intention is lacking here, a recognition of this principle on the part of the chancellor would have led to a dismissal of the suit''.

It would perhaps be sufficient to point out that the complainant did sign the contract along with the defendant and the lessee. But if it were otherwise, the intention which controls in this connection, as in others, is the intention expressed by the language of the contract which must be given effect even though not actually entertained. Hence the fact that the defendant's representative was unaware of the contract provision and therefore did not really intend to benefit the com-

plainant, does not control the question. Since it signed the contract, the defendant must be held to the intention manifested by the language used, and of this there can be no doubt.

It may be also observed in this connection that it is a settled rule in this jurisdiction that a contract for the benefit of a third party may be enforced by the latter. Title Guaranty & Trust Co. v. Bushnell, 143 Tenn. 681, 228 S. W. 699, 12 A. L. R. 1512; Associated Indemnity Corp. v. McAlexander, 168 Tenn. 424, 79 S. W. (2d) 556; Blair v. Southern Clay Mfg. Co., 173 Tenn. 571, 121 S. W. (2d) 570.

In support of its fifth contention, the defendant insists that it is against public policy for ''an agent employed to negotiate a sale for the purchase, sale or exchange of property (to) make a contract for compensation with the other party to the transaction'', and, as said, it is contended in this connection that, notwithstanding the contract recites that the complainant was the agent of the defendant, the evidence shows that he was in fact the agent of the lessees named in the agreement and acting for their benefit.

There are many authorities which fully support the general rule invoked by the defendant, but it is equally well settled that ''an agent of one of the parties to a sale or exchange of property may legally make a contract with the other party to the transaction, with the knowledge or consent of his principal''. 2 Am. Jur. 239. And that is the case here. The record leaves no doubt that all of the parties were fully aware of the status of the complainant in relation to each of them.

The chancellor correctly summed up this phase of the case in the following language: ''Viewing the foregoing

facts in the light of the outstanding rights and obligations under Paragraph #28 of the lease agreement, what was known to all as stated above, and accepting the view of Clyde Denton that E. O. Bailey was acting throughout as representative of Thomas & Wiener, the situation thus disclosed amounts to nothing more nor less than an agreement, in writing, by one of the two parties to a real estate deal to bear the compensation of the agent or representative of the other. The realities of the present situation seem to be precisely that.''

 This brings us to the final contention, earnestly and ably presented, to the effect that the condition of the agreement was not fulfilled because the property was not sold to the partnership named as the lessees in the contract, but to the Thomas Wiener Company, a Tennessee corporation. This contention was argued vigorously before the chancellor and fully considered by him. We think his disposition of the contention was correct and we again avail ourselves of the benefit of his efforts by adopting his language. It is as follows:

''The defendant Title Guaranty Company places strong reliance on the position that the leased premises were not 'sold to lessee' under the lease. The substance of this argument is that the partnership, Thomas Bros. Candy Company was the lessee under the lease; whereas, the final contract of sale was made with Thomas-Wiener Co. a Tennessee corporation, and the premises were conveyed to that corporation.

''The record in the present case is that this corporate grantee was in every practical and business sense a successor to the partnership lessee. Complainants urge that clause #27 of the lease providing that all agreements and undertakings in the lease shall extend to and

be binding on the respective heirs, executors, administrators, successors and assigns of the respective parties hereto, etc., is controlling. In other words, that the leased premises were sold to the successor of 'lessee herein' when Paragraph #27 and #28 of the lease are read together. Arguments and illustrations could be multiplied indefinitely in support of the pro or con of this question without finally removing doubt.

"Cases, however, have heretofore been before the courts which are quite similar in principle invoked to the instant one. In Shapira v. Union Tr[ust] Co., 1931 [306 Pa. 35], 158 A. 564, 566, one of the defenses made in opposition to the right of the broker to commission was that the actual conveyance was not made to the party who had been interested as a result of the agent's efforts, but was in fact, made to corporate nominee. The Supreme Court of Pennsylvania thus briefly disposed of the contention: 'That title was made to another person would not deprive appellant of his commission. Heffelfinger v. Haas, 71 Pa. Super. 425; Curry v. West, 88 Pa. Super. 261. The title to the property was here taken by a corporation; but this would not alter or affect appellant's right to a commission where it appears that the corporation was merely the creature of the purchaser with whom the agent dealt. Such fact is established by the evidence in this case.'

"The New York Supreme Court, Appellate Division, 2d Dept. had before it a like issue in Kogan v. Reilly, 1939, [258 App. Div. 913], 16 N. Y. S. (2d) 482, 483. That Court said: 'The corporate lessee produced by plaintiffs, with which, according to the evidence, the lessors agreed upon the terms of the lease, intended for its own purposes to take the lease in the name of a

wholly-owned subsidiary, which was merely a division or department of the lessee's organization. This did not alter the status of the parent corporation as the real lessee. "We may penetrate the disguise of form and see the substance beneath." York Mortgage Corp. v. Clotar Const. Corp., 254 N. Y. 128, 138, 172 N. E. 265, 269.'

"An examination of the authorities relied on in the preceding citations reveals that those courts were applying, in cases of the same class as the present one, the doctrine so clearly announced by the Supreme Court of Tennessee in Fidelity Tr[ust] Co. v. Service Laundry Co., 1929, 160 Tenn. 57 [22 S. W. (2d) 6, 8], wherein the following apt quotation is found: 'The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes of convenience and to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical.'

"The above opinion and others therein cited are regarded as announcing the rule controlling the instant case. To regard the conveyance to Thomas-Wiener Company as defeating the claim of complainant under the facts here, if otherwise valid; would indeed be giving vital effect to a form or fiction which has an origin and reason utterly foreign to and extraneous of the matter at issue between complainant and defendant."

In conclusion, we may say that the defendant places much stress upon the unreasonableness of the con-

tract provision sued on and argues that it is one that no prudent person would make; that in reality since ample compensation was provided for services rendered in negotiating the lease, the provision that the agent was to receive in addition a commission on the sale price was tantamount to an obligation to pay the agent a sum of money which he had done nothing to earn; that in any view of the matter the amount required to be paid was out of all proportion to any service that was rendered by the complainant. Whether this criticism is justified, we need not go out of our way to decide. It may be conceded that the provision is unique and seems extraordinarily favorable to the broker. But the fact nevertheless remains that the defendant signed the contract and we perceive no way whereby under the facts of this case it can be released from its obligation without seriously unsettling fundamental principles by which the conduct of business is made possible.

It is the duty of courts, and one which they are constantly called on to perform, to be on guard against allowing apparently hard cases to induce them to make bad law. As already indicated, in the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though containing terms which may be thought harsh and unjust. Dark Tobacco Growers' Ass'n. v. Mason, supra; Smithart v. John Hancock Mut. Life Ins. Co., supra; Home Beneficial Ass'n. v. White, supra.

The result is that the decree is affirmed at the cost of the defendant.