**PERCY GALBREATH & SON, INC., Appellant,**

v.

**DEHYCO COMPANY, INC. and Albert F. Harris, Appellee.**

Court of Appeals of Tennessee, Western Section.

Aug. 23, 1976.

Certiorari Denied by Supreme Court March 14, 1977.

James E. Harpster and Henry L. Klein, Rickey, Shankman, Blanchard, Agee & Harpster, Memphis, for appellant.

John S. Richbourg, Owen & Lail, W. Frank Crawford and Robert V. Redding, Thomason, Crawford & Hendrix, Memphis, for appellee.

MATHERNE, Judge.

The issue on appeal is whether, under the terms of two lease contracts and the proof in the record, the plaintiff agent is entitled to a commission on rentals to be paid under renewals of the original leases, which renewals were effected by the defendant lessor and not by the plaintiff agent.

I.

In 1969 the plaintiff, engaged in the business of acting as agent in the sale and leasing of commercial and industrial property, negotiated for the defendant-owner the two lease agreements now in controversy.

One lease to the Cawthon Steel Company, Inc. provides at paragraph 40 thereof as follows:

This lease was negotiated by Percy Galbreath & Son, Inc., acting as Agent for the Lessor, and Lessor agrees to pay Percy Galbreath & Son, Inc., the usual commission (in accordance with the Schedule of Minimum Commissions recommended by the Memphis Board of Realtors) for services in negotiating this lease; also to pay Percy Galbreath & Son, Inc., the usual commission for any subsequent lease that may be entered into by the Lessor with the Lessee.

The other lease to Kiger & Jackson, Inc. has an identical provision designated as paragraph 38 thereof, except the wording enclosed by parenthesis reads as follows: "(in accordance with the rules of the Real Estate Board of Memphis)."

Both leases contain a provision that there are no other promises, agreements, conditions or understandings, either oral or written, between the parties other than as set out in the written lease.

The record establishes that the two leases expired in 1974 and the defendant entered into another lease agreement with each lessee. The new Kiger & Jackson, Inc. lease was entered into with Ralph L. Jackson, Inc., the successor corporation to Kiger & Jackson, Inc., on June 28, 1974 for a period of five years at a total rental of $76,500. The new Cawthon Steel Company, Inc.

lease was entered into on the same date for a five year term, providing for a total rental of $76,500.

Under the original leases the plaintiff collected the rentals, retained a commission of 5% and forwarded the balance to the defendant lessor. The plaintiff claims it is entitled to 5% of the total rentals as reflected in the two new leases. The plaintiffs did not negotiate the new leases.

The plaintiff's position is that it is entitled to the 5% commission under the paragraphs of the leases as heretofore quoted regardless of whether it negotiated the new leases. The plaintiff insists the commission is due based upon its service in negotiating the original leases.

The defendant claims the terms of the contract and the acts of the parties thereunder contemplate a negotiation of the new lease by the plaintiff as agent before any commission is due the plaintiff based upon the new lease.

There is no proof of a "Schedule of Minimum Commissions recommended by the Memphis Board of Realtors" as might have existed on the date of the new leases. There is no proof of what a "usual commission" might have been on that date.

II.

We hold that the lawsuit of E. O. Bailey & Co. v. Union Planters Title Guaranty Co. (1949) 33 Tenn.App. 439, 232 S.W.2d 309, controls this lawsuit on the issue of the plaintiff's right to a commission based upon the new leases. In Bailey, the lease contained a provision identical to those here under consideration plus the following sentence:

The Lessor also agrees to pay to E. O. Bailey & Co., Inc. (the agent), the usual sales commission in the event the within leased premises are sold to Lessee herein."

The leases under consideration in this lawsuit also have the above sentence as relate to sales to the lessees. in Bailey the owner-lessor sold the premises to the lessee; whereas, here the owner-lessor entered into

new leases with the lessee. The Court in *Bailey* held that the agent was entitled to a commission on the sales price received by the lessor-owner.

On this point there is no ambiguity in the terms of the contract. If a subsequent lease is entered into between the lessor and lessee the plaintiff agent is entitled to a commission. The consideration to the defendant lessor is the service performed by the plaintiff agent in obtaining the original lease. It can be readily assumed that any lessee is a prospective tenant for a renewal of the lease under terms satisfactory to the parties. *Bailey, supra.*

■ In the absence of fraud or mistake, neither being present in this lawsuit, a contract must be enforced as it is written, even though containing terms which may be thought harsh and unjust. *Bailey, supra.*

■ It results that the trial judge erred in holding that under the facts and circumstances the parties intended that the plaintiff agent must have negotiated the new leases before it would be entitled to a commission based upon the rentals to be paid under the new leases.

### III.

■ In order to prevail under its contracts, the plaintiff agent had only to prove three elements: (1) the terms of the contract as contained in the original leases; (2) the execution of the new leases and the rentals due thereunder, and (3) the commission due it. We hold that the plaintiff agent has failed to prove the third element necessary for a judgment.

■ There is no proof of what a "usual commission" was on the date of the original leases nor on the date of the new leases. There is no proof of a "Schedule of Minimum Commissions as recommended by the Memphis Board of Realtors." The parties apparently agreed to a 5% commission under the original leases. The plaintiff in its brief makes the following statement as to its demand for a 5% commission:

What the contract calls for is the usual commission as defined by the Memphis Real Estate Board at that time. This could be 4%, it could be 5%, it could be 6%, or it could be any other percentage, depending upon the action of the Real Estate Board and the state of the economy. It happens that the Real Estate Board at that time prescribed 5% and it is for that which Appellant prays.

The plaintiff, therefore, admits that the contract allows a commission that may vary from time to time, and that the amount contemplated to be paid must be determined by proof adduced in conformance with the terms of the contract.

The defendant's payment of a 5% commission for five years under the original leases and the testimony of the defendant's official that he was satisfied with that arrangement do not constitute proof of commission due under the new leases.

The contracts require proof to establish the amount of the commission. The courts cannot assume, as did the plaintiff, that a particular percentage figure meets the requirements as set out for determining the commissions due. If the rate prescribed by the Real Estate Board was 5% as stated by the plaintiff, there is no proof of that fact in the record.

The plaintiff cannot prevail, having failed to prove the amount of commission to which it is entitled. The plaintiff's lawsuit is dismissed. The cost in this Court is adjudged against the plaintiff-appellant.

CARNEY, P. J., and NEARN, J., concur.