# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 11, 2001 Session

## EILEEN WILSON DUNLOY v. BRIAN EDWARD DUNLOY

### Appeal from the Chancery Court for Marshall County
### No. 8684     Lee Russell, Chancellor

---

### No. M2000-03103-COA-R3-CV - Filed May 27, 2003

---

WILLIAM B. CAIN, J., dissenting.


I respectfully dissent.

The majority is introducing a doctrine that might aptly be called "judicial substitution" by substituting the term "accrued benefit" in the place and stead of "account balance" as it actually appears in paragraph 35 of the MDA, and then further assuming as a matter of law that "accrued benefit" mandates application of the "present cash value" method of distributing the retirement income plan which is the subject of paragraph 35 of the MDA. I find no justification for either the substitution or the assumption which work a reversal of the trial court's studied consideration of the issue.

The only witnesses to testify at this hearing were Michael Guyton, an expert witness employed by Mrs. Dunloy and G. Michael Yopp, an expert witness employed by Mr. Dunloy. Neither of these experts had been involved in any way with the divorce case or knew anything about the intent of the parties when they executed the marital dissolution agreement contemporaneously with the April 1994 divorce. The only evidence subsequent to the divorce hearing bearing on the intent of the parties in the property settlement agreement is a joint stipulation filed April 8, 1997 which is crucial to the outcome of this case. This stipulation provides: "As evidenced by the signatures of their attorneys set forth below, the parties hereby stipulate that the remainder of the property settlement division is equitable standing independently of paragraph 35."

The difficulty arises in the fact that everyone agrees that paragraph thirty-five standing alone makes no sense. While the 401k plan distributed pursuant to paragraph thirty-four of the MDA had an "account balance" as of April 29, 1994, there is no such thing as an "account balance" in a retirement income plan such as that involved in paragraph thirty-five of the MDA. The only testimony offered at the February 14, 1997 hearing was the testimony of two expert witnesses ex post facto as to what the parties really intended by paragraph thirty-five of the April 29, 1994 MDA. Mr.

Dunloy insists that the term intended by the parties in paragraph thirty-five was "accrued benefit" rather than the term "account balance." This would in his view pave the way for an actual cash value benefit for Mrs. Dunloy frozen in time at the divorce date.

Mrs. Dunloy, on the other hand, insists that the parties intended in paragraph thirty-five to provide for a deferred compensation method involving the "coverture fraction." Mr. Guyton, testified without contradiction by Mr. Yopp, as to the definition of the coverture fraction method.

> The coverture fraction method looks at the time that the parties were married and they participated in the plan. That would be the numerator; number of month, years of service. And the denominator would be the entire length of time that the participant was a member of the plan up to his retirement age or he separates employment.
> That fraction would be applied to the benefit determined at his separation of employment, which would give you the marital share, which would then be divided equally.

While the parties strenuously disagree as to the proper interpretation of paragraph thirty-five both parties with equal vigor deny any ambiguity in the language used.

First of all, it is well to observe that an ambiguity "does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions." *Cookeville Gyocology and Obstetrics, P.C. v. Southeastern Data Systems, Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994); *see also Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001).

The Tennessee Supreme Court has held:

> The overriding purpose of the Court in interpreting the contract is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. *Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, Tenn., 521 S.W.2d 578 (1975); *Walker v. Tennessee Farmers Mut. Ins. Co.,* Tenn.App., 568 S.W.2d 103, 105 (1977); 17 Am.Jur.2d *Contracts* § 244 (1964). Another fundamental principle which is applicable here is stated in the *Restatement of Contracts*, § 236(b), as follows:
>
>> "The principal apparent purpose of the parties is given great weight in determinating the meaning to be given to manifestations of intention or to any part thereof."
>> Also applicable here is a principle which has been aptly stated as follows:
>> "The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible

to consider the situation of the parties and the accompanying circumstances at the time it was entered into--not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement." Restatement of Contracts*, § 235(d) and Comment.*
Particularly pertinent here is the following principle:
"Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it." 17 Am.Jur.2d *Contracts* § 255 (1964) at 649.

This principle was applied in this State by the Court of Appeals in *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 33 Tenn. App. 439, 232 S.W.2d 309, 3165 (1949), the court stating: "[A]n unexpressed obligation will be implied when it is clear that it was intended." *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 333-34 (Tenn. 1983).

Whether or not the law requires the court to find the distribution of marital property to be equitable under an MDA in a divorce not based on irreconcilable differences grounds, one element of the intent of the parties established by the proof in this case was that they intended an equitable distribution of their marital property. They so stipulated immediately before the February 14, 1997 hearing. Apparently, what nobody wanted was for the trial court to upset any part of the marital dissolution agreement relative to marital property that was not involved in paragraph thirty-five of the MDA. That this kind of isolation of paragraph thirty-five from the remainder of the marital property division concerned the trial court as to the equitable nature of the entire distribution of marital property was evident at the conclusion of the February 14, 1997 hearing:

THE COURT: I'm also thrown back without any proof on the division otherwise between the property interest of the parties, because I don't know whether this was meant to - - whether Paragraph 35 was meant to balance off detriments or benefits in any other - - in the rest of the MDA, or if I may assume that everything else in the MDA was balanced and as it should be, given the facts of the case, and so I should be doing something in Paragraph 35 in rewriting Paragraph 35 and dividing up the retirement that equally divides the interest between the two parties.
THE WITNESS: With due respect to the Court, as Mr. Martin pointed out, the MDA contains severability language which says that the rest of this was apparently a[n] intensely negotiated document.

THE COURT: Okay. Let's talk about the severability language. The severability language says that a determination that Paragraph 35 is not enforceable does not invalidate the other paragraphs. I'm not suggesting for a minute that it would invalidate; I'm saying that the - - I must still take into account the rest of the property settlement division in order to decide what is equity with regard to the retirement. I'm saying these are two very different things. The one says we're throwing the whole thing out, the other says I'll look at what was done and the appropriateness in all the other divisions to decide what is equitable to do with the retirement benefits. You don't' see that those are the same thing?

The parties envisioned the totality of the marital property division to be an equitable one. Isolation of paragraph thirty-five and applying Mr. Dunloy's proposed "frozen" as of the date of the divorce approach would result in Mrs. Dunloy receiving an expected monthly benefit upon Mr. Dunloy's retirement at age sixty of $565.00. If she chose a lump sum at that time it would be approximately $60,000.00. Adopting the deferred jurisdiction approach proposed by Mrs. Dunloy she would receive a monthly benefit at Mr. Dunloy's retirement at age sixty in the amount of $1,087.00 per month. If she chose a lump sum benefit at the time of Mr. Dunloy's retirement it would be $161,702.00. Thus, the reason for the trial court's concern about overall equitable distribution is obvious. This frozen or "present cash value" has serious drawbacks in determining the equitable distribution of the entire marital estate:

Once the present cash value is calculated, the court may award the retirement benefits to the employee-spouse and off set that award by distributing to the other spouse some portion of the marital estate that is equivalent to the spouse's share in the retirement interest. *In re: Marriage of Gallo*, 752 P.2d at 54. The present cash value method is preferable if the employee-spouse's retirement benefits can be accurately valued, if retirement is likely to occur in near future, and if the marital estate includes sufficient assets to off set the award.

*Cohen v. Cohen*, 937 S.W.2d 823, 831 (Tenn. 1996).

Like *Croley v. Tiede*, No. M1999-00649-COA-R3-CV, 2000 WL 1473854 (Tenn. Ct. App. Oct. 5, 2000), the calculation of the benefits payable at retirement in this case is back loaded. The benefit is figured using the average salary of the last three years prior to retirement rather than being figured on the basis of units of equal value such as were reflected in *Cozart v. Cozart*, 1999 WL 669225 (Tenn. Ct. App. Aug. 27, 1999).

The parties intended an equitable distribution of all of their marital property and the trial court held that this meant application of the deferred distribution method envisioned in the coverture fraction. As to a "back loaded" retirement benefit, it is immaterial whether we are dealing with a vested or an unvested retirement benefit. In *Croley*, we applied the "time rule" formula based upon the "marital foundation theory" articulated by the Supreme Court of Colorado in *In re: Marriage of Hunt*, 909 P.2d 525 (Col. 1995) and *In re: Marriage of Kelm*, 912 P.2d 545 (Col. 1996).

The trial court decision applying the "coverture fraction" to deferred distribution is clearly the most equitable solution to the present problem and conforms to the parties' stipulated intent to effect an equitable distribution of the entirety of their marital property.

It is well to observe that the term "accrued benefit" does not necessarily mean the "present cash value" method of distribution. Under the deferred distribution method the "coverture fraction" is accrued as of the date of the MDA. It is the numerator which remains static in contrast to the continually expanding denominator resulting from post-divorce employment of Mr. Dunloy.

"The fairness and equity of the 'time rule formula' stem from the static numerator of the marriage years compared to the ever expanding denominator of the post marriage years so that the percentage of the actual retirement income assigned to the non-employee spouse continues to diminish with each year added to the denominator by the continued post divorce employment of the employee spouse prior to his actual retirement." *Croley*, 2000 WL 1473854, at *10.

In this case the trial judge was faced in a situation where neither party wanted to disturb any part of the Marital Dissolution Agreement except paragraph 35. The parties stipulated that except for paragraph 35, the distribution was "equitable" in accordance with their wishes. The term "account balance" is meaningless when applied to pension benefits not payable until the retirement of Mr. Dunloy. The parties cannot agree as to the meaning of paragraph 35 as to the method of distribution. On the stipulation of the parties that all other distributions of marital property in the MDA were meant to be equitable, the trial court properly assumed that both parties intended for paragraph 35 to involve an equitable distribution of retirement benefits. He applied the deferred distribution method in making an equitable distribution. The evidence does not preponderate against his decision and he has not abused his discretion. Judicial substitution is not an appropriate appellate remedy and I would affirm the trial court.

_____
WILLIAM B. CAIN, JUDGE

-5-