MARK B. SMITH

*v.*

ARTHUR MURRAY.

(*Jackson,* April Term, 1957.)

**Opinion** filed March 4, 1958.

Rehearing Denied April 9, 1958.

Laughlin, Watson & Creson, Memphis, for petitioner (complainant).

Sohm, Humphreys & Ling and J. E. Madden, Memphis, for respondent (defendant).

Mr. Chief Justice Neil delivered the opinion of the Court.

Mark B. Smith, a licensed real estate broker in the City of Memphis, filed his original bill in the Chancery Court against Arthur Murray, seeking a decree against him for $3,500 as commissions alleged to be due him as a result

of a sale of land by the owner, John P. Williams, to Murray.

The bill charged that complainant was a duly licensed real estate broker and that in August, 1955, ''he learned that John P. Williams was interested in disposing of a tract of land (99.40 acres) owned by him; that after negotiations with the said Williams as to price and terms, in September, 1955, the complainant was given oral authority to seek a purchaser and submit any offers or bids upon a basis of a net amount per acre to John P. Williams, the purchaser to assume all liability for real estate commissions to the complainant as broker.'' The net price per acre to the owner was $800. The bill further charged ''that the complainant immediately commenced the usual efforts to find such a purchaser.'' It is further charged in the bill that through a personal friend ''he learned that the defendant, Arthur Murray, might be interested in buying land in that locality, and he there-upon contacted the said Murray, providing him with the name and residence of the said Williams'', also the description, price and terms as originally suggested by the said Williams, specifically including the condition that the broker's commission was assumed by the pur-chaser.

Complainant charges that Murray requested a plat of the land and that Mr. Ben Matthews later on showed Murray the property on behalf of the complainant; that sometime thereafter (date not stated) the defendant pro-ceeded to approach the owner and deal directly and ''surreptitiously'' with the said John P. Williams for the land involved, to the end that he purchased it on or about December 28, 1955; that prior to the consummation of

the purchase the complainant notified both Williams and Murray "of complainant's just and lawful claim to his standard broker's commission."

The defendant, Murray, answered the bill, insisting that he had.no knowledge that the property had ever been listed with the complainant. He admits he had a conversation with complainant about the property and requested that he procure a price and plat of the same, but he at no time agreed to pay complainant's commission; that the complainant did not procure a price or plat or binding contract or offer from the owner.

The answer further admits that Mr. Ben Matthews rode out with him to the site of the property and "told the defendant that he understood that Mark B. Smith was the agent for the property, and that if he bought the property he would have to buy it through Smith." It is denied that Smith was authorized to act for the defendant; it is expressly insisted that Mark B. Smith performed no services on his, defendant's, behalf, and that all his conversations with Smith were as Williams' agent. The answer finally denied that the defendant was liable to Smith for any commission.

Williams was not sued in this cause and, of course, filed no answer. He later testified, however, and denied that the property was listed with Smith for sale and denied that Smith was his agent for any purpose.

When the case came on to be heard the Chancellor submitted the following issues to the jury:

"1. Was complainant, Smith, given an open listing as real estate broker of the property of John P. Williams on Covington Pike in Shelby County, Tennessee?

"2. Was complainant, Smith, the effective and procuring cause of the sale of the property of John P. Williams to defendant, Arthur Murray?"

The jury answered each of the foregoing questions in the affirmative and thereupon the Chancellor rendered judgment for the complainant and against the defendant for $3,500, the amount of the commission claimed to be due.

The defendant prayed and was granted an appeal to the Court of Appeals. In response to appropriate assignments of error the Chancellor was reversed and complainant's bill dismissed.

We granted *certiorari* to review the merits of the complainant's contention that the Court of Appeals erred in holding, "We are not cited to any Tennessee case holding that the purchaser of real estate is liable for commissions in the absence of an agreement to pay such commissions." The issue has been ably presented to the Court by oral argument as well as by brief of the respective counsel.

The basis of the Court of Appeals' opinion was that there was no privity of contract between Mark B. Smith and the defendant, Arthur Murray, citing *Turnure v. Poss,* 12 Tenn.App. 519, and this additional authority:

"Sec. 149.—*Prospective Purchasers and Third Persons.*—A broker has no right of recovery against a prospective purchaser who refuses to complete the transaction, unless there is a contract between the purchaser and the broker. Even though a purchaser, after beginning negotiations with the broker, goes di-

rectly to the owner, he is not liable to the broker for commissions lost, unless he fraudulently prevents the consummation of the broker's contract. Nor is a third person who prevents the broker from earning commissions liable therefor, unless he uses wrongful means." 8 Am.Jur. (Brokers), p. 1073.

In response to the foregoing the petitioner's counsel say: "This is necessarily correct, but the statement begs the entire question. The true question is *whether or not there was any evidence or inference to support the jury's finding the defendant, Murray, expressly or impliedly agreed to bear the broker's commission.*" (Emphasis ours.) The petitioner bases his whole case on the contention that the purchaser, Arthur Murray, should be held liable solely because "he was repeatedly informed of such condition and *agreed he would not attempt to circumvent the broker, complainant Smith.*" (Emphasis ours.)

Contention is made by petitioner's counsel that an implied contract between the complainant and the defendant arose as a result of the defendant's silence when he was informed that the purchaser would assume the broker's commission. In other words, it was his legal duty to speak up and deny that he would agree to pay commissions when advised that a sale would not be consummated except on the owner's original terms.

It must be admitted that there was some evidence to support the jury's finding as to issue No. 1, *supra*, that the owner listed the property with Smith to find a purchaser at a price of $800 per acre plus commissions, which approximated $40 per acre additional.

The defendant, four months later, bought the land directly from Williams at $700 per acre. Nothing was said about a broker's commission. When Mr. Smith was informed that Mr. Murray had closed a contract with Mr. Williams for the purchase of the property, he addressed a letter to both Williams and Murray, the closing paragraph being as follows:

"This is to inform you that I expect at the time of the closing of this sale, the payment of my real estate sales commission of 5% on the sale price. Mr. Williams listed this property with me for sale and I offered the same to Mr. Murray, and as a result of my bringing the two of you together the sales contract was entered into, which entitled me to my commission.

"Very truly yours,

"Mark B. Smith
"81 Madison Building
"Memphis 3, Tennessee"

It thus appears without dispute that at the time this letter was written the complainant was claiming joint and several liability on the ground that "as a result of my bringing the two of you together the sales contract was entered into, which entitled me to my commission." He later abandoned any claim he may have had against Mr. Williams (at least he was not sued in this cause), and asserted his right to a commission only as against Mr. Murray on the theory of an implied contract.

We concede that there is some evidence (testimony only of Mr. Smith) that Mr. Williams gave him an open listing of the property as heretofore stated, and we are

thus bound by the jury's response in the affirmative. There is no evidence to support the finding of the jury as to issue No. 2, i. e. that the petitioner was "the effective and procuring cause of the sale". But if he, in any way, was the procuring cause it was a service rendered the owner and not the buyer.

The issues and the answers set up a typical case of liability on the part of the owner for the broker's commission.

We cannot agree with counsel for the petitioner that the verdict of the jury was decisive of the issue of defendant's alleged liability under an implied contract, nor can we agree that the defendant's obligation to pay the real estate commission became fixed, as a matter of law, on the ground that he remained silent when advised by Mr. Ben Matthews, who was a stranger to the contract, that in case of a sale the purchaser would have to assume payment of the broker's commission. There is no rule of law or principle of equity to justify this Court in holding that a purchaser of real estate must expressly disavow any liability for a broker's commission when a *stranger to the contract* purportedly advises him that he assumes liability for such commissions in the event he purchases the property.

The original bill of the petitioner shows without dispute that he did not seek to hold the defendant liable on the ground of an implied contract, but solely because he had brought "the two of you together" and that the defendant purchased the property "surreptitiously". The bill makes no charge that the defendant had conspired with the owner to defeat his right to a commission or of

any act of fraud or deceit whereby the petitioner was deprived of his lawful compensation. Moreover the petitioner Smith made no complaint in his testimony that Mr. Murray had wronged him in any way, other than he had purchased the land "surreptitiously". It appears that following the open listing of the property Mr. Smith never communicated with the owner, Mr. Williams, nor submitted any proposition from any one to buy the property.

We can find nothing in the pleadings or in the testimony to sustain the petitioner's contention that Arthur Murray obligated himself by his silence or otherwise to assume liability for the broker's commission. It is our well considered opinion that the Chancellor erred in not withdrawing the issues from the jury because there was no privity of contract between Mark B. Smith and the defendant. Moreover the petitioner's counsel both in oral argument and on his brief conceded that no such relationship existed.

But the petitioner bases his whole case on the theory that Murray should be held liable solely "because he was repeatedly informed that the purchaser agreed he would not attempt to circumvent (or go around) the broker, complainant Smith." There was no consideraiton whatever to support any implied agreement to pay Mr. Smith's commission.

In support of the petitioner's contention that defendant had bound himself under an implied contract the counsel say:

"The true axis of the case at Bar is succinctly stated in 9 C.J. 586 (Brokers—Sec. 84), as follows:

" 'A real estate broker, representing only one party, cannot recover commissions from the other. Thus, where a broker is employed by the owner of the land to sell the same, the purchaser is not liable for broker's commissions, *unless he has agreed to conditions of sale which include the payment of the commissions by the purchaser, or unless he has agreed with the broker to pay them.*' (Emphasis supplied.)" See also 12 C.J.S. Brokers sec. 82.

We cannot disagree with the foregoing citation of authority, but it is not applicable to the case at bar because the purchaser had not agreed with either the owner or the broker, Mark B. Smith, to pay the commission.

The "axis of the case at Bar" rests upon petitioner's insistence that Murray assumed liability by his silence, or by his failure to acquaint the petitioner of his intention to negotiate with the owner for the purchase of the land.

The question of when a person becomes legally obligated to another by his silence varies, depending upon the facts of each and every case.

"The law of estoppel is a branch of the law of evidence, for it is the law by which evidence of the truth is excluded. Equity does not favor estoppels against the truth, and it has been broadly said, perhaps too broadly, that where the element of fraud is wanting there is no estoppel. It is a growing branch of the law, in which decided cases are of less value than usual, for the reason that every cause must depend upon its own peculiar facts and circumstances. As a general rule there must be word or conduct by one party, action

based thereon by the other party, and injury to the latter to preclude the admission of evidence in conflict with the word or conduct.'' *Hume v. Commercial Bank,* 77 Tenn. 728, 748.

Since the petitioner, Smith, relies upon 12 Am.Jur. (Contracts), Section 40, p. 533, as authority in support of defendant's liability arising from an implied contract and is furthermore estopped to dispute such liability *because of his silence,* we quote it in full, as follows:

"It is a general rule of law that silence and inaction do not amount to an acceptance of an offer. Thus, generally speaking, mere silence or failure to reject an offer when it is made does not constitute an acceptance. Under some circumstances, however, silence and inaction operate as an acceptance, as where, under the circumstances, an inference of assent is warranted or at least where, under the circumstances, such an inference is required or is necessary. An agreement inferred from silence must rest on the principle of estoppel, and a change of position, in reliance on such silence, resulting in substantial injury is an essential element of the estoppel. It is said that circumstances which will impose a contractual obligation by mere silence are exceptional in their character and of rare occurrence; and no legal liability can arise out of the mere silence of the party sought to be affected, unless he is subject to a duty to reply which is neglected, to the harm of the other party. A mere failure to reject amounts to an acceptance where the offeree has agreed in advance that such silence be so construed or where there was some duty resting upon him to that effect.''

The argument of learned counsel based upon the foregoing general and correct statement of controlling principles is intriguing. We are apparently led to a consideration of unilateral contracts, and when a party who is supposed to have an interest is in duty bound to speak in order to avoid liability. In other words, the question posed is just when is one's silence so conclusive upon him that, in law, it is an admission of liability and he is thereby estopped to deny its effect?

■ Contention is made that the doctrine of estoppel applies and that Mr. Murray's silence amounted to an admission or acquiescence in the terms of the contract of sale. We concede that in some circumstances one's silence may work an estoppel as in *Murray v. Grissim,* 40 Tenn.App. 246, 290 S.W.2d 888; and *Cole-McIntyre-Norfleet Co. v. Holloway,* 141 Tenn. 679, 214 S.W. 817, 7 A.L.R. 1683. But the facts in these cases are in no way analogous to the case at bar. Moreover the doctrine of estoppel cannot be invoked to prove a relationship which does not exist.

■■ In the case at bar the equitable principle of estoppel has no application because the petitioner was not prejudiced by Murray's alleged silence. The position of the parties was the same as it had always been. His silence was not an inducement to Mark B. Smith to act. In fact it was not an inducement for him to do anything. One of the essential elements of the doctrine of estoppel is that a person by his silence or inaction has induced another to act to his prejudice; still another is that the silence complained of is in the nature of a fraud which results in damages to another. No such claim is made in the case at bar, either in the pleadings or testimony of

any witness. In these circumstances the defendant was not required to specifically disavow anything, and especially his willingness to pay the broker's commission. No case is cited and we have not found any which imposes such diligence and foresight on the part of a purchaser of property, especially where the defendant's conduct is not in the presence or hearing of the complainant, the broker, but to a mere stranger.

The assignments of error are overruled, and the decree of the Court of Appeals is affirmed.

TOMLINSON, BURNETT and SWEPSTON, JUSTICES, concur.

PREWITT, JUSTICE, dissents.