**Michael H. CLARK, d/b/a Mike Clark Company, Plaintiff-Appellee,**

**v.**

**Larry WRIGHT, Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

July 12, 1985.

Permission to Appeal Denied by
Supreme Court Sept. 30, 1985.

Winston S. Evans, Nashville, for plaintiff-appellee.

David M. Smythe, King, Ballow & Little, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

This is a suit to collect a real estate commission.

Following a bench trial, the Trial Judge entered judgment for plaintiff Michael H. Clark, d/b/a Mike Clark Company (agent) against defendant Larry Wright (buyer) in the amount of $4,811.92 representing the commission and prejudgment interest.

The facts out of which this suit arose are as follows:

Buyer contacted agent in the latter part of 1983 in regard to a house which had been listed for sale by agent. Ms. Jerri Trimmer, a broker employed by agent, showed buyer the home. Buyer was not interested in that particular home but indicated that he would be interested in purchasing a home in the Brentwood area of Williamson County.

Agent learned of a home which had been listed with Dobson & Johnson Real Estate Agents by Rodney H. and Elizabeth Y. Lunn (sellers). Agent showed buyer the home and buyer subsequently entered into a contract with the sellers to purchase the home for $150,000.

The contract provided in pertinent part as follows:

That the seller in consideration of the sum of $2,000.00 DOLLARS as earnest money and in part payment of the purchase price has this day and does hereby agree to convey ... the following described real estate....

Buyer agrees to purchase said real estate and to pay therefor the sum of $150,000.00 DOLLARS,

. . . .

Mike Clark Company and Dobson and Johnson as agent shall receive a commission of 6% to be paid by seller 3% to Dobson & Johnson, 3% to Mike Clark Company.

. . . .

Default by Buyer. Should buyer default in the performance of this contract on his part at the time and in the manner specified, then at Seller's option the earnest money shall be retained as partial liquidated damages, which retention, however, shall not prevent suit by Seller for the specific performance of this contract. Out of said liquidated damages and any other damages retained or recovered by Seller, there shall first be paid to the Agent his commission.

The closing was set for October 13, 1983; however, buyer was unable to perform under the contract because, according to him, he did not have the necessary funds. He stated he would have the funds the next day. All parties agreed to postpone the closing to October 14th. The buyer did not tender the purchase price at that time or at anytime thereafter.

Buyer testified that he had informed Ms. Trimmer on several occasions that he would be able to close only if he was able to obtain payment of a large check he possessed which had been returned for insufficient funds. This was disputed by Ms. Trimmer. The Trial Judge, on this point, found: "[W]hether or not he told either his own agent or the joint agent that he couldn't perform unless his check was made good, that's a fact issue, and I resolve that in favor of the plaintiff...."

No suit has been brought against the seller for the recovery of commissions, nor has the seller brought suit against the buyer for his specific performance of the contract or damages. Dobson & Johnson have not brought suit for their one-half of the real estate commission.

The buyer presents the following issues:

I. Whether the Trial Court erred in awarding judgment for the plaintiff-agent against the defendant-buyer for the agent's commission when the contract sued upon provided that the seller would pay such agent's commission?

A. Whether the Trial Court erred in holding that the plaintiff-agent was a third party beneficiary to the contract with enforceable rights against the defendant-buyer?

B. Whether the Trial Court erred in implying a direct right of action for the plaintiff-agent against the defendant-buyer when the contract prepared by the plaintiff-agent was silent as to such direct right of action?

C. Whether the Trial Court erred if it based its judgment for the plaintiff-agent on the theory that the plaintiff-agent was due its agent's commissions by virtue of a quasi contract or under the theory of quantum meruit?

II. Whether the Trial Court erred in failing to grant defendant-buyer's motions for directed verdict, motion to set aside the judgment, and motion for a new trial?

We first discuss subsections A and B.

Buyer concedes that the agent was a third-party beneficiary to the contract and that a third-party beneficiary generally may enforce a contract made for his benefit. *E.O. Bailey & Co., Inc. v. Union Planters Title Guaranty Co.*, 33 Tenn. App. 439, 232 S.W.2d 309 (1949). It is buyer's contention, however, that the Trial Court erred in holding that agent "had the right to sue the buyer directly for buyer's alleged breach of his promise to the seller."

In support of his contention, buyer relies on *Smith v. Murray*, 203 Tenn. 292, 311 S.W.2d 591 (1958); *Turnure v. Poss*, 12 Tenn.App. 519 (1931), and the following statement from T.G. Guthrie on the liability of a defaulting purchaser to the owner's broker or auctioneer, Annot., 30 A.L.R.3rd 1395 (1970):

> The general view taken by many courts has been that the defaulting purchaser is not liable to the vendor's broker for the breach of the purchaser's contract with the vendor, the rationale evidently being that the broker is not a party or privy to the contract of sale or that the purchaser

is not privy to the contract of employment; ....

Id. at 1397.

In *Turnure*, the seller listed his home for sale with the agent. The agent "called upon the [buyer] and tried to sell him the property at the list price." The buyer declined, but offered $5,000. The seller agreed to sell for $5,000 if agent would reduce his commission. The agent reduced his commission, and the seller and buyer then entered into the sales contract. Thereafter, the buyer refused to purchase the home because "his wife had become dissatisfied." The agent brought suit directly against the buyer for the loss of his commission resulting from the buyer's default.

The Court stated as follows:

> The material question presented in this court is the right of the agents to recover from the contracting buyer their commissions due them under their contract with the seller. Under this contract when the agents procured a purchaser who bound himself in writing to buy the property at the stipulated price, and this offer was accepted, then the agents had performed their contract with the seller, had earned their commission, and were entitled to collect from the seller, notwithstanding the purchaser breached his contract by refusing to carry out the sale.

> The agents have not pursued their claim against the seller, but have asserted a right to recover from the contracting buyer for the breach of his contract with the seller. Now have they a cause of action against both the seller and the buyer to recover the commissions contracted by the seller? We think not. *There was no privity of contract between the buyer and the agents.* Without question the seller has a cause of action against the buyer for the buyer's breach of contract (if he desires to prosecute it, and has not lost it by his own fault) and he can enforce specific performance or sue for damages. Suppose the agents recover their commission from the purchaser and the seller later

seeks and obtains a specific performance. The buyer would then pay the commissions in addition to the purchase price. Here the agents have a good cause of action against the seller, because they have fully performed their contract, but the agents assert an independent cause of action against the buyer because of his breach of contract. When the seller is liable for the commissions and solvent, what damages have the agents suffered because of the breach by the buyer? We are of the opinion there was no privity of contract between the agents and the buyer and the agents have no cause of action arising out of the breach of the buyer's written contract.

*Id.* at 520 (citations omitted) (emphasis supplied).

We are of the opinion that *Turnure, Smith,* and "the general view" set forth in 30 A.L.R.3d at 1397 are inapposite to this case. In both *Turnure* and *Smith,* the real estate broker was the agent of the seller. The court agreed in both of those cases with "the general view" that where the broker is the agent of the vendor, and the vendor contracted to pay his agent, and the broker is not a party to the contract, then the purchaser is not in privity with the contract of employment between the agent and the seller.

■ Here, the agent is the agent of the buyer. Agent, on behalf of buyer, went looking for a home for the buyer, albeit without entering into a contract whereby buyer agreed to pay the agent a fee. However, we regard it as a matter of common knowledge that the ordinary prospective purchaser knows that when he consults an agent and buys property through that agent, the seller, in the absence of an agreement to the contrary, will pay the agent a commission out of the proceeds of the sale of the real estate.

In *Turnure,* the court went on to state the following:

Where a prospective purchaser enlists the services of a real estate broker to procure a contract of sale in order that he may purchase the land at a specified price, with the broker's commissions to be paid by the seller, and the broker performs the agreement by procuring the contract to sell at a designated price but the prospective buyer refused to carry out his agreement to take the land, then the broker may recover his loss, which is measured by his commission, from the buyer. The brokers in the first instance became the agents of the buyer, under an agreement to procure for him a contract for the sale of the land wanted. When the agents performed their duties by procuring the contract, their fee or compensation was earned. Had the brokers attempted to sell this land to another after procuring the contract for their principal, they would have breached their trust. The principal could not say the agents were not entitled to their compensation after the performance of their agreement just because the principal wanted to abandon the undertaking. There is nothing wrong with the seller contracting with the buyer to pay his (the seller's) brokerage commissions; and a buyer may employ a broker to make a purchase for him with the agreement the seller will pay the commissions. The payment of the commission is only an incident to the employment. One may enter into an agreement to render services for another and look to a third person for his compensation but the party to the contract cannot lay obstacles in the way of the collection from the third party nor defeat the payment.

12 Tenn.App. at 522.

In *Ellsworth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 236 A.2d 843 (1967), the New Jersey Supreme Court, in addressing the "liability of the buyer to the broker," stated in part as follows:

What, then, should be the responsibility of the buyer to broker when, through the broker's efforts and negotiations between the parties, the owner (A) expresses his willingness to accept the buyer's offered price for the property, or (B) executes a written contract of sale with the buyer for the agreed price, providing

that the broker's commission is to be paid upon closing of title?

This Court has held that when a prospective buyer solicits a broker to find or to show him property which he might be interested in buying, and the broker finds property satisfactory to him which the owner agrees to sell at the price offered, and the buyer knows the broker will earn commission for the sale from the owner, the law will imply a promise on the part of the buyer to complete the transaction with the owner. If he fails or refuses to do so without valid reason, and thus prevents the broker from earning the commission from the owner, he becomes liable to the broker for breach of the implied promise. The damages chargeable to him will be measured by the amount of commission the broker would have earned from the owner....

[I]n 12 C.J.S. *Brokers* § 81 (1938), it is stated:

> "[W]here a broker is employed by the owner of property to sell the same, the purchaser is not liable for the broker's commissions, unless he has agreed to pay them or is liable therefor by way of damages for failing or refusing to carry out his contract, or for some other wrongful act or omission which interferes with the broker's right to recover commissions from his principal."

Moreover, there is substantial authority elsewhere to the effect that a real estate broker may sue a purchaser who refuses to carry out his contract with the vendor, even though the broker has agreed to look to the vendor for his commission.

In *Blache v. Goodier* [22 So.2d 82 (La. App.1945)], the Court of Appeals of Louisiana said on this subject:

> "It is settled that * * * the [broker's] commission is due by the prospective purchaser if, after binding himself, he refuses to comply with his agreement." 22 So.2d at pp. 85–86.

In discussing the same type of case, the Supreme Court of Washington, in *Livermore v. Crane*, [26 Wash. 529, 67 P. 221, 57 L.R.A. 401 (1901)], regarded as immaterial the question whether in the original negotiation on the sale the broker was the agent of the vendor or the purchaser. It said the cause of action was for violation of the contract of purchase from which violation damages directly resulted to the broker. 67 P. at p. 222. In this connection, it may be noted that in *Treadway v. Piazza*, 156 So.2d 328, 329 (La.App.1963), the court declared that when a prospective vendor engages the service of a real estate broker, the legal relationship is that of principal and agent. But once the broker finds a prospective vendee, he becomes an agent of both parties.

We accept the broad view of the purchaser's liability suggested by these authorities, and find no conflict between it and the holding of this Court in *Tanner* [*Assoc., Inc. v. Ciraldo*, 33 N.J. 51, 161 A.2d 725 (1960)]. As set forth above, Iarussi requested Dobbs to find land suitable for residential development, which could be bought by him on agreeable terms. When the Johnsons' acreage was shown to him and he contracted to buy it, he knew they had agreed to pay commission to Dobbs upon the sale. Under the circumstances, the *Tanner* rule is clearly applicable and Iraussi became subject to an implied obligation to Dobbs to complete the purchase, and upon default, incompletion, he became liable to pay the commission which Dobbs was thereby deprived of from the Johnsons. 50 N.J. at 559–61, 236 A.2d at 859–860 (citations omitted).

We are of the opinion that where a prospective buyer of real estate solicits a broker to find real estate, and where that broker finds satisfactory real estate and the owner agrees to sell, and the prospective buyer knows that the broker will earn commissions from the owner, the law will imply a promise of the prospective buyer to complete the transaction; and if he fails or refuses without a valid reason and prevents the broker from earning a commission from the seller, then the prospective

buyer becomes liable to the broker for his breach of an implied promise, and the damages chargeable will be measured by the amount of the commission the broker would have earned if the sale had been consummated.

We find no conflict with this rule and the rule in *Turnure v. Poss* or *Smith v. Murray.*

The buyer also contends that "[t]he Trial Court erred *if* it based its judgment for the plaintiff-agent on the theory that the plaintiff-agent was due its agent's commissions by virtue of a quasi-contract or under the theory of quantum meruit."

The buyer does not argue that the Court did not base the amount of damages on the fact that the agent was entitled to recover on the theory of quantum meruit or quasi-contract; he says only that *if* it did, the Court erred. We find it unnecessary to address this issue since the Court awarded the agent the amount of the commission he would have earned had the sale been consummated, that is, three (3%) percent of the sales price.

We pretermit the second issue in view of our holding.

The judgment of the Chancellor is affirmed with costs assessed against the appellant-buyer and the cause remanded to the Chancery Court for the collection of costs, enforcement of its judgment, and any further necessary proceedings.

TODD, P.J. (M.S.), and CANTRELL, J., concur.